IN RE MARRIAGE OF JOIE E. KRAMER, APPELLANT, AND JUDA
  ANN KRAMER, RESPONDENT.

No. 14125.
Submitted May 4, 1978.
Decided May 31, 1979.
580 P.2d 439.

62

See also, 176 Mont. 362, 578 P.2d 317.

Daniels & Mizner, Deer Lodge, Ted L. Mizner (argued), Deer Lodge, for appellant.

Edward Yelsa (argued), Anaconda, for respondent.

MR. JUSTICE SHEEHY delivered the opinion of the Court.

This is an appeal by the father of three minor children from the amended findings of fact, conclusions of law and decree of dissolution entered by the Powell County District Court on October 13, 1977, concerning custody of the children and distribution of the marital property. No issue is taken to the granting of the divorce.

The parties were married on November 7, 1953. As a result of this marriage, six children were born. Three of those children were still minors at the time of the action for divorce. The minor children are: Shelly Susan Kramer, age 15; Vicki Joyce Kramer, age 13, and, Joie Allen Kramer, age 11.

The father filed a petition for dissolution of marriage on March 23, 1977. In the petition he stated that both parties were fit and proper persons to have custody of the children but the best interest of the children would be served by awarding custody to him.

On April 7, 1977, the mother filed a counterpetition for dissolution of marriage. In her petition, she denied the fitness of the father to have custody and sought custody of the children herself. She filed a motion for temporary child support during the pendency of the divorce action. She further requested that the court enter a restraining order against the father to keep him from distrubing her. The District Court signed a temporary child support order of $275 per month on April 7, 1977, and granted the mother's request for restraining order against the father.

On June 15, 1977, the mother filed a motion and affidavit seeking to have the father placed in contempt of court for failing to comply with the court's order on temporary child support. The District Court ordered that a show cause hearing be held on the

mother's motion. This hearing was held on June 24, 1977. On that date, the father filed a motion to quash the order to show cause which the court overruled pro forma. At the conclusion of the hearing, the court took the matter under advisement.

The divorce action was brought to trial on July 1, 1977. Upon the request of the mother, the court appointed attorney David Scott, Esq. to represent the children in the divorce proceedings, with respect to the custody issue. However, Scott was not present during any state of the July hearing. The court also ordered an investigation be conducted by the Powell County Welfare Department concerning custodial arrangements for the minor children. This order was consented to and concurred in by the parties. At the conclusion of the hearing, the parties agreed the welfare report would be used in preparing proposed findings of fact and conclusions of law for the court.

The report by the Welfare Department was submitted to the court and sent to respective counsel on July 19, 1977. In that report, the investigator recommended custody of the three minor children be awarded to the father. On August 5, 1977, the mother filed a motion to exclude the welfare report from consideration as evidence because of its hearsay nature. Hearing was held on this motion on August 15, 1977. At this hearing the court ordered the report excluded, but allowed the father to reopen his case for the testimony of the investigator who prepared the report. However, when the investigator was testifying the court limited her testimony to expressing an opinion as to the proper custodian based on her observation of the conditions in the respective homes and her conversations with the parties only, not with others she may have interviewed. She testified that in her opinion custody should be awarded to the father.

The court, after hearing the testimony of the investigator, interviewed each one of the minor children individually in chambers with counsel for the respective parties and a court reporter present. Appointed counsel for the children was not present during the interviews of the children or the testimony of the investigator. In the

interviews, two of the children Shelly and Joie, when asked by the court whom they wanted to live with, expressed a desire to live with their father. The third child, Joyce, stated she did not care which one of her parents she lived with.

On August 25, 1977, the District Court entered findings of fact, conclusions of law and decree of dissolution. The court found that the best interests of the children would be served by awarding custody to their mother. The court found the net worth of the parties, less their liabilities, was $63,714.00 It further found that in the first six months of 1977 the father earned $15,000 as a carpenter and building contractor and the mother earned $350 per month as a postal employee.

In its decree the court ordered the mother be awarded the family home valued at approximately $39,500 and all of the furniture and equipment in the home; that the father be required to make the payments on the mortgage of approximately $10,000 still owing on the home; that when the debt on the home is liquidated and all of the children reach the age of majority, the home should be sold and the proceeds, along with the personal property then remaining in the home be divided equally between the parties; that the husband be awarded the 1975 (3/4 ton) Ford truck and the wife the 1976 Ford Granada with any indebtedness on it to be paid by the husband; that the husband pay $300 per month child support ($100 per child per month) and, for 15 years $250 per month alimony; and, that the husband pay the wife's reasonable attorney fees. The court also entered an order quashing the earlier order to show cause for contempt, but the father was ordered to pay $1,250 for arrearages in child support payments.

On September 12, 1977, the father filed a motion for new trial, to set aside and vacate final judgment, for relief from the judgment and for stay of execution. Affidavits by Shelly and Joie Kramer were filed, which again expressed their desire to live with their father. Hearing was held on the father's motion on September 23, 1977. Counsel for the children was present at this hearing. On October 13, 1977, the court denied the relief requested by the father.

However, the court did amend its original findings in regard to the distribution of property and the payment of alimony. In the amended findings, the mother was awarded the salvage check for the 1976 Ford Granada, because the car was repossesed. The court amended the alimony award by not having it commence immediately, but gradually as each child reaches the age of majority. It is from these amended findings, conclusions, and decree that the father appeals.

After filing his notice of appeal on November 10, 1977, the father petitioned this Court for a writ of supervisory control. We denied him the relief requested.

In December 1977, while this appeal was pending, the mother sought enforcement of the District Court's decree on custody fo the children, child support and the distribution of the marital property. To obtain enforcement of the decree, the mother petitioned this Court for a writ of habeas corpus. We denied her the relief requested saying that enforcement of the judgment could be obtained in the lower court while the judgment is on appeal. *Kramer v. Kramer* (1978), 176 Mont. 362, 578 P.2d 317, (Decided May 11, 1978.)

The father in his appeal from the judgment of the District Court raises three issues, they are:

1. Whether the trial court erred in this distribution of the marital property?

2. Whether the trial court abused its discretion in awarding custody of the minor children to their mother.?

3. Whether there were irregularities in the proceedings in the District Court that denied the father and the three minor children a fair trial on the issue of custody?

As to the firts issue, the husband argues the court abused its discretion in its distribution of the marital property. He maintains that the court failed to divide the property equitably because the wife received a greater share.

"It is well settled in Montana that a district court has far

reaching discretion in resolving property divisions and its judgment will not be altered unless a clear abuse of discretion is shown. *Eschenburg v. Eschenburg*, (1976), 171 Mont. 247, 557 P.2d 1014, 1016. The criteria for reviewing the district court's discretion is: Did the district court in the exercise of its discretion act arbitrarily without employment of conscientious judgment, or exceed the bounds of reason in view of all the circumstances. *Berthiaume v. Berthiaume*, (1977), 173 Mont. 421, 567 P.2d 1388" *Zell v. Zell*, (1977), 174 Mont. 216, 570 P.2d 33, 35.

Applying that standard to this case, we believe the District Court did abuse it discretion in its discretion of the marital property.

An examination of the property division ordered by the court reveals the wife received the greater share of the property. She received the family home, which has an appraised value of $39,000, plus the value of the personal property in the home and all awarded to her. This asset and the personal property was to be divided equally when the children reached the age of majority. However, in the meantime, the husband was to liquidate the debt on the property, maintain the property, and pay all the taxes and insurance on the property. In addition, he was ordered to pay child support and eventually, as the children became of age, to pay alimony to the wife. The only property awarded to the husband was the 1975 Ford truck.

We feel this division of the property was not equitable. The court abused its discretion in dividing the property in this manner. *Berthiaume v. Berthiaume* (1977), 173 Mont. 421, 567 P.2d 1388. Therefore, the findings and conclusions of the trial court concerning the distribution of the property must be reversed and a new trial held on that issue:

In a new trial on this issue, the court must determine the net worth of the parties at the time of the divorce. *Downs v. Downs* (1976), 170 Mont. 151, 551 P.2d 1025. In its original findings, the trial court determined the new worth of the parties to be $63,714.00. The court arrived at this figure on the basis of the wife's Exhibit B, which was a financial statement of the parties

dated December 12, 1975. The court erred in admitting this document into evidence and using it to determine the parties' net worth, because the exhibit was too remote in time to be of any probative value concerning the net worth of the parties at the time of the divorce and there had been changes in the financial circumstances of the husband since that date. In a new trial on the distribution of the property, if a financial statement is to be used to establish the net worth, then it must be one that was prepared at or near the time of the divorce to show the present applicable finances of the parties.

■ We have reversed the distribution of the property ordered by the trial court therefore we must also reverse the court's alimony award to the wife, because the needs of a spouse as to alimony and the reasonableness of such an award can only be properly determined after there has been an equitable division of the marital estate. *In re Marriage of Johnsrud* (1977), 175 Mont. 117, 572 P.2d 902. There not being an equitable division of the marital estate, we reverse the alimony award entered by the court.

The second and third issues involve the court's determination of custody of the children. The father argues the court abused its discretion in awarding custody of the children to the mother. The mother contends the custody award was proper in that the evidence shows the father is not fit to have custody. The father also argues the court erred in excluding the report of the investigation by the welfare department and in hearing the child custody issue without the presence of the children's attorney. The mother maintains the court did not commit any error in its handling of the proceedings on custody.

■ The thrust of the father's argument in regard to the court's award of custody is that it ignored the requirements of section 58-332, R.C.M.1947, in determining the best interests of the children. He points out that, under this section, the court must consider the wishes of the children as to their custodian. Section 48-332(2), R.C.M.1947. He asserts the court ignored the wishes of the children to live with him in giving custody to the mother. We

agree. We believe the court did abuse its discretion in granting custody to the mother.

Our examination of the record reveals the children wanted to live with their father and made their wishes known to the court on three separate occasions. The first occasion was an interview with counsel for the father in the chambers of the court, with a court reporter present. The minutes of this interview were made a part of the record. In this interview, the children all stated they wanted to be with their father. The second occasion was when the court interviewed the children in chambers with counsel for both parties present; two of the children expressed their desire to live with their father, the third child had no preference between her parents. The third occasion was on the motion for new trial. At that time, the court was presented with the affidavits of the children and heard the testimony of one of them. Again, the court was told the children wanted to live with their father.

In its findings of fact, the court makes no memtion of the desires of the children as to a custodian. In its October 13 "OPINION OF THE COURT ON MOTION FOR NEW TRIAL" the court stated: "* * * the children, * * *, were under patental pressure when making their affidavits and when one of them was testifying on the motion." It is not clear to us how the court arrived at such a conclusion. The record shows the children when asked if they were being pressured by either parent, denied any pressure was being put to bear on them by their father or their mother.

We are committed to the view that the welfare of the children is the paramount consideration in awarding custody. *Lee v. Gebhardt* (1977), 173 Mont. 305, 567 P.2d 466; *Schiele v. Sager* (1977), 174 Mont. 533, 571 P.2d 1142. We believe the welfare of the children, particularly children of the ages involved here, is not being served if their wishes are not considered by the trial court. Therefore, we hold the court should make a specific finding, stating the wishes of the children as to their custodian, and, if the court determines that the children's wishes are not to be followed, the court should state in its findings the reason it has chosen not to follow thier wishes.

We also agree with the father that there were irregularities in the proceedings that denied him and the children a fair trial on the issue of custody. Since these matters will come up in a new trial on custody, we will prove some guidance to the trial court as to procedure.

■ We believe that the court erred in excluding as evidence the report of the investigation by the Powell County Department of . Welfare, concerning the custodial arrangements for the children. Further the court erred in limiting the testimony of the investigator who prepared the report. Such investigations and reports on custody are authorized by section 48-335, R.C.M.1947. It provides:

"(1) In contested custody proceedings, and in other custody proceedings if a parent of the child's custodian so requests, the court may order an investigation and report concerning custodial arrangements for the child. The investigation and report may be made by the county welfare department.

"(2) In preparing his report concerning a child, the investigator may consult any person who may have information about the child and his potential custodial arrangements. Upon order of the court, the investigator may refer the child to professional personnel for diagnosis. The investigator may consult with and obtain information from medical, psychiatric, or other expert persons who have served the child in the past withot obtaining the consent of the parent or the child's custodian; but the child's consent must be obtained if he has reached the age of sixteen (16) unless the court finds that he lacks mental capacity to consent. If the requirements of subsection (3) are fulfilled, the investigator's report may be received in evidence at the hearing.

(3) The court shall mail the investigator's report to counsel and to any party not represented by counsel at least (10) days prior to the hearing. The investigator shall make available to counsel and to any party not represented by counsel the investigator's file of underlying data, and reports, complete texts of diagnostic reports made to the investigator pursuant to the provisions of subsection

(2), and the names and addresses of all persons whom the investigator has consulted. Any party to the proceeding may call the investigator and any person whom he has consulted for cross-examination. A party may not waive his right of cross-examination prior to the hearing.

■ In this case, upon completion of the investigation and report, the mother moved to have it excluded as being hearsay evidence. We agree with her that the out-of-court statements of the investigator, contained in the report, are hearsay. *Ronchetto v. Ronchetto* (1977), 173 Mont. 285, 567 P.2d 456. However, as pointed out in *Ronchetto*, section 48-355(3), R.C.M.1947, provides a means of avoiding the hearsay problem. It establishes the requirements for the admission of such reports into evidence and provides that either party has the right to cross-examine the investigator and any person whom she has consulted. By complying with this section, there would be no violation of the hearsay rule. Therefore, we hold the report should be received into evidence under the conditions specified in section 48-355(2), (3), R.C.M. 1947.

■ We also feel that the District Court erred in deciding the custody issue, when the appointed attorney for the children did not participate. Prior to the determination of this question, the children's attorney was not present at any of the hearings. He was appointed by order of the court on July 1, 1977. The record shows that substantial evidence was presented at the hearing on that date concerning the best interest of the children. On August 15, 1977, the court conducted the interviews with the children. The children's attorney was not present at either the hearing in July or the interviews. However, the court proceeded to determine the issue of custody in favor of the mother in August 1977. The attorney for the children was present at the hearing on the motion for new trial in September 1977. Even though he was present then and did question the witness, our examination of the record indicates he took no position as to which parent would serve the best interests of the children as their custodian.

In such case where custody is in serious dispute, the court has the power to appoint an attorney for the children to aid the court in reaching a decision on the issue. Section 48-324, R.C.M.1947. The purpose of this statute is to provide the children with an advocate who will represent thier interests and not the parents' interest. This means the attorney is not to take a passive role in the hearing on custody. He should represent the children actively and present to the court all the evidence he can marshal concerning the best interests of the children.

The trial court's decree is set aside except for the dissolution of the marriage and the cause is remanded for a new trial on the issue of the distribution of the marital property, support, and custody of the children in accord with this opinion.

MR. CHIEF JUSTICE HASWELL, MR. JUSTICES DALY, HARRISON and SHEA concur.