No. 84-10

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

_____

IN RE THE MARRIAGE OF
ARDIS EILEEN MERRY,

       Petitioner and Respondent,

  and

ROBERT OWEN MERRY,

       Respondent and Appellant.

_____

APPEAL FROM:  District Court of the Eighth Judicial District,
              In and for the County of Cascade,
              The Honorable H. William Coder, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Kenneth R. Olson; Baiz & Olson, Great Falls, Montana

    For Respondent:

        Nancy Peterson; Alexander & Baucus, Great Falls,
        Montana

_____

Submitted on Briefs:  June 28, 1984

Decided:  October 31, 1984

Filed: OCT 31 1984

*Ethel M. Harrison*

_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment of the District Court of the Eighth Judicial District, in and for the County of Cascade. Respondent, Ardis, brought an action in dissolution of the parties' marriage, and asked for custody of the parties' minor child, asked for child support, set forth a visitation schedule, asked for an equitable division of the marital property and for her attorney's fees. From a judgment for the respondent the appellant, Robert, takes this appeal.

Prior to trial, the parties entered into an agreed statement of facts which included stipulated agreements between the parties as to the various criteria to be considered by the court in the division of the marital property as set forth in section 40-4-202, MCA.

The parties entered into their marriage September 13, 1959, in Circle, Montana. In May of 1982, after approximately twenty-three years of marriage, the parties separated, with the respondent, Ardis, leaving the family home. During the years of their marriage, four children were born, however at the time of the dissolution only one, Julianne, born November 6, 1973, was under the age of eighteen. It was stipulated by the parties that respondent, Ardis, would have the sole custody of Julianne, with the appellant, Robert, to have reasonable visitation pursuant to a visitation schedule agreed upon by the parties.

Their statement indicates that Ardis worked off and on at different jobs, until 1977 when she went to work for the Department of Highways for the State of Montana. Since

1977 she has been employed by the Department as a right-of-way agent. Robert has been employed as a surveyor, teamster and equipment operator throughout the period of the parties' marriage.

The marital estate consists of both real and personal property located both in and outside the State of Montana. The real property comprising the marital estate includes the parties' residence in Great Falls, Montana, which was purchased by the parties in 1969. The home was purchased by making a down payment of $4,000 and financing the balance through a savings and loan association at Great Falls. At the date of the hearing, approximately $5,000 remained to be paid on the mortgage and the fair market value of the home was agreed upon by the parties to be $40,000.

Due to appellant's objections, to be hereinafter considered, concerning the distribution of property, we set forth the court's findings of facts 9, 10, 11, 12, 12 [sic] and 13 verbatim:

> "9. The parties, throughout their marriage, had accumulated certain personal property. Since the separation of the parties on May 24, 1982, the parties have divided the personal property amongst themselves, and agree that each party may presently keep that personal property which is in his or her possession. Respondent is in possession of the parties' 16-foot Larson boat with Mercury outboard motor and the majority of the household furnishings, including the living room furniture, dinette set and bedroom set. Petitioner is in possession of her 1980 Datsun vehicle, her daughter's bedroom furniture and certain items which could not be removed from the home such as a washer and dryer.
>
> "10. The parties have incurred certain liabilities during the course of their marriage. These liabilities are as follows:
> Federal Land Bank                    $56,566.00

-3-

```
First Federal Savings & Loan
   Association of Great Falls    $4,801.00
GMAC (Bob's truck)              $3,180.00
Cicosta                           $900.00
Hershel and Irene Merry         $3,400.00
Montana Dept. of Revenue          $359.00
First National Bank             $1,500.00
Attorneys' lien on cabin
   (Dennis Clarke attorneys'
   fees for Respondent in
   representation of this
   dissolution)                 $1,250.00
Land taxes on the Davison
   County farm                  $1,239.00

            TOTAL              $73,195.00
```

"Certain of these liabilities, such as the Montana Department of Revenue, Cicosta, First National Bank and attorneys' lien on the cabin are liabilities incurred solely by Respondent.

"11. Petitioner has incurred debts on her own behalf since the separation of the parties at Sears, The Bon, and the credit union.

"12. The parties have accumulated certain real property during the course of their marriage. The following is a list of such real property and dates and methods of acquisition:

"(a) The family residence located at 2721 Fifth Avenue South, Great Falls, MT (Lot 9, Block 31, Black Eagle, Great Falls Addition) was purchased by the parties in 1969 for $16,000. A down payment of $4,000 was made from a joint savings account and the balance was financed at First Federal Savings and Loan Association of Great Falls. Approximately $5,300 remains owing on that balance. The fair marked value of the home is approximately $4,000.00 [sic] [$40,000.00] and the parties' current equity in the home is $34,700.

"(b) Cabin and lot in Lincoln, Montana. In 1978, the parties purchased the cabin and five lots near Lincoln, Montana. (Lots 25, 26, 29, 30 and 32 Palmer Subdivision, Lewis and Clark County, Montana). The current fair market value of this property is $34,400 and is debt free. The cabin was financed by renegotiation of the Federal Land Bank loan discussed below, in 1978.

-4-

"(c) Aurora County, South Dakota farm. In 1969 Petitioner inherited a one-sixth (1/6) interest in an 80-acre tract of farmland located in Aurora County, South Dakota. (S1/2SW1/4, Section 17, T105N, R63W, 5th P.M., Aurora County, South Dakota). In 1962 Petitioner further inherited a one-ninth (1/9) interest in the same property from her father's estate. Petitioner and her sister later acquired a further five-eighteenths (5/18) interest in the same property for $4,200. This money was taken from a joint savings account of Petitioner and Respondent. Further, a note which was owed to Petitioner's sister was considered paid in full because of this transaction. Petitioner's interest in said property is approximately 33 acres at the present time. The fair market value of this property is $300 per acre, thus making Petitioner's interest in said property worth approximately $9,900. This property was inherited and acquired during the marriage of the parties, however, Respondent made no contributions to the property in terms of farming or working the property. The property has been leased to third parties, and Petitioner has received only one payment therefrom.

"This farm initially belonged to Petitioner's maternal grandfather and was later Petitioner's mother's property. Petitioner inherited the property from her mother and her father upon their deaths in 1961 and 1962, respectively. The property has alwasys [sic] been maintained, since Petitioner's grandfather's ownership of said property, in Petitioner's family.

"(d) Davison County, South Dakota farm property. Upon Petitioner's father's death in 1962, Petitioner and her siblings, after litigation, inherited 320 acres of farmland in Davison County, South Dakota. (E1/2, Section 29, T104N, R61). The cost for the above litigation was paid by Petitioner and her siblings, Petitioner obtained the funds from joint accounts. The 320 acres was initially to be shared by the Petitioner and her two sisters and one brother. The four parties agreed to put the property up for sale, but due to what Petitioner felt to be an extremely low price, Petitioner matched the existing purchase price and purchased the property. Petitioner and

-5-

Respondent obtained a loan from the Federal Land Bank in Mitchell, South Dakota in 1971, in the amount of $18,600 to finance the purchase of the farm. The parties also borrowed $2,000 from Respondent's parents which has been paid back. A note was given to Petitioner's sister, Carol, for $6,000 for her interest in the property.

"This farm is held by Ardis E. Merry and Robert O. Merry as is evidenced by the warranty deed on file herein. In 1974 the note to the Federal Land Bank was refinanced for an additional $10,000. This $10,000 was used by Respondent in 1974 and 1975 when he attempted to farm the property himself. It was Respondent's idea to farm the property himself and it was his desire to farm the property. Petitioner at no time asked him to farm the property or suggested that idea.

"In 1978 the note to the Federal Land Bank was again refinanced when the parties purchased the Lincoln property discussed above. An additional $33,000 was borrowed at this time with $30,000 being applied directly to the purchase of the Lincoln property. The $3,000 remaining went directly to Respondent and into his sole checking account.

"From 1971 through 1978, the Davison County farm basically made money overall. During that period of time the farm was either leased or Respondent attempted to farm the property. After the refinancing in 1978 for the purchase of the Lincoln, Montana cabin, the farm has lost money in varying amounts. Petitioner on several occasions requested Respondent to raise the amount of the lease payments, but Respondent has failed or refused to do so, even though Petitioner has told him that the property was worth more that [sic] what they were obtaining under the lease.

"The Davison County farm consists of 230 acres of farmland and 90 acres of pasture. This farm belonged to Petitioner's father and was farmed by him during this lifetime. It is also the home wherein Petitioner was raised and spent her childhood.

"Respondent farmed the property for two years, which Respondent offered to do on

his own, and enjoyed doing. This was done even though Respondent could have leased the farm at that time. Respondent and Petitioner both benefitted [sic] from the expenses of the farm under joint income tax returns every year in 1971. In 1978, no farm payment was due to the Federal Land Bank and an additional $3,000 was acquired for the refinancing of the Federal Land Bank note at that time. Respondent took the lease payments and the $3,000 and used these amounts for his own benefit, without accounting for these amounts to Petitioner and without acquiring property that benefited the marriage or the family. With the lease payments and the $3,000 from the Federal Land Bank, less the taxes, this amounted to approximately $7,000. Petitioner had no share in the receipt of that $7,000 in any way.

"12. [sic] Petitioner inherited 80 acres of the 320 acres of the above-described farm. The remaining 240 acres was purchased by the parties through the Federal Land Bank financing. Petitioner is willing to assume the entire Federal Land Bank mortgage of approximately $56,000-57,000, which includes the mortgage on the cabin. Petitioner is willing to give to Respondent, free and clear excepting the attorneys' lien on the cabin, the cabin and lots in Lincoln, Montana.

"13. Petitioner desires to keep the family home of the parties and is willing to assume the mortgage on that home. The home is presently rented to Petitioner and Respondent's older daughter and her husband. Petitioner has so rented the house in order to make the necessary repairs and be able to deduct them as costs of improving rental property. Petitioner intends to move back into the home by July of 1985 with the minor child of the parties. By renting the home to the older daughter of the parties, Petitioner is able to provide after school care for the minor child of the parties without cost in that the parties eldest daughter then takes care of the minor child."

As to the personal property of the parties, the agreed statements of fact indicated that Robert took a majority of the furnishings from their residence in Great Falls. In

addition, the court order gave Robert all of his personal items that were in the cabin at Lincoln, Montana.

In addition Robert received $10,900 as a partial settlement from a wrongful discharge suit against the City of Great Falls. The wrongful discharge that led to the settlement occurred in March of 1979, prior to the dissolution of the marriage. At that time Robert withdrew his retirement from the City of Great Falls in the amount of approximately $13,500. He put $10,000 of that amount in a Franklin fund in his name and that of his daughter, Julianne. Controversy exists between the parties as to whether or not that money was used for the family or was entirely used by Robert for personal use.

Testimony indicates that all told, Robert received approximately $31,000 since 1979 as a result of his termination. $6,600 was placed back in his retirement account as a city employee. Ardis has slightly over $5,000 in her retirement fund accrued while working for the State of Montana.

Four issues are presented to this Court on appeal:

(1) Did the trial court err in adopting the respondent's proposed findings of fact and conclusions of law and order?

(2) Did the court err in distributing the marital estate and ignore the criteria set forth in section 40-4-202, MCA, in the distribution?

(3) Did the court err in making the distribution of the marital assets by considering the alleged dissipation by the appellant of certain martial assets?

(4) Did the court err in awarding respondent her

-8-

attorney's fees?

The first issue is directed to the adoption by the trial court of the respondent's proposed findings of fact and conclusions of law and order. Robert alleges that the trial judge received the proposed findings of fact and conclusions of law on November 14, 1983, and that the next day left office, at which time he adopted the findings of fact and conclusions and order en toto. He notes that Ardis' proposed findings had obvious typographical errors, and in adopting them the court even adopted the typographical errors. For example the home was listed at $4,000 instead of $40,000 and other minor word mispellings were contained in the court's findings. Appellant argues that with the wind-down of all of his affairs, the trial judge did not take the necessary time to make a careful, studied and fair decision. He alleges it was error for him to "rely too heavily upon the proposed findings and conclusions of one party," citing Tomaskie v. Tomaskie (Mont. 1981), 625 P.2d 536, 38 St.Rep. 416; In re the Marriage of Hunter (Mont. 1982), 639 P.2d 489, 39 St.Rep. 59; City of Billings v. Public Service Commission (Mont. 1981), 631 P.2d 1295, 38 St.Rep. 1162.

We have long held that the wholesale adoption of one party's proposed findings and conclusion is not in itself an automatic basis for vacating the judgment. Citing In re the Marriage of Glasser (Mont. 1983), 669 P.2d 685, 40 St.Rep. 1518. In a long series of cases, this Court has disapproved of the practice where it is apparent that the trial court relied too heavily on proposed findings, "to the exclusion of the proper consideration of facts and the exercise of

-9-

independent judgment." In In re the Marriage of Goodmundson (Mont. 1982) 655 P.2d 509, 39 St.Rep. 2295, we noted that it is acceptable procedure where findings and conclusions are "extensive and detailed" and the court "explained its reasons for adopting the findings of one party."

Rule 52 of Montana Rules of Civil Procedure, provide the guidelines for the trial court to follow in entering its findings of fact and conclusions of law following trial by the judge. The pertinent part of that rule states: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. . . "

By Robert's calculations, there is a seventy/thirty percent split in the marital property. He complains that the inequity was the result of unfounded allegations of gambling losses and a dissipation of the marital assets.

Here we find there was a substantial amount of conflicting evidence brought forth by the parties in this case. Taking Robert's figures as correct, there was a disparity in the distribution of the marital estate, the seventy/thirty split mentioned above. The only question is whether, under the facts of this case, this split was warranted. There is testimony that several life insurance policies, joint savings and checking accounts, stock accounts and mutual funds were liquidated by Robert and used for his benefit alone. According to Ardis' estimation, the value of this is approximately $28,000, or twenty percent of the marital property. The testimony of Robert indicates he paid family bills and spent money for his own use. Studying

the findings of the court, it is difficult to determine if this dissipation equals the amount of the seventy/thirty percent split, referred to above, since the court makes no specific findings as to the amount of the alleged dissipation by Robert. Robert argues that he cannot attack the findings of the court because they were based on vague allegations and were not specific enough. However, by Ardis' account, they appear to be substantially correct. Robert had his opportunity at the trial level to present the specific amounts, account for where this money went, but was unable to come up with any specific details by which the court could set forth his position as to this money.

What Robert appears to be questioning from this Court is for a remand to the District Court for more specific findings. We find this not warranted, because Robert had opportunity to present his evidence, did so, and the court found against him. His lack of specificity was his downfall and he should not benefit from it with a second chance. Taking the evidence in a light most favorable to the prevailing party below, there was substantial evidence to sustain the trial court's judgment.

Next, Robert alleges the trial court erred in distributing the marital property and did not follow section 40-4-202, MCA, in its order. Robert begins his argument in this by saying he "believes" the trial judge made a "hasty and inappropriate decision . . . because he was anxious to wind up the affairs of his office before he left." He contends that the findings are clearly wrong because the court awarded the seventy/thirty percent distribution of the marital estate. It should be noted that these figures do

not include all of the alleged dissipated funds, which Robert controlled. Nor do the figures include the settlement obtained by Robert from the City of Great Falls due to his illegal firing. The trial court found that the settlement was part of the marital estate and awarded that to Robert. In addition it would appear that the trial court attempted to try and balance out the property division in view of the fact that some of the funds had been dissipated by Robert. This is a consideration which was reviewed by the trial court as mandated by section 40-4-202, MCA.

Robert cites and relies upon In Re the Marriage of Herron (1980), 186 Mont. 396, 608 P.2d 97, arguing that while inherited property or gifts may be considered part of the marital estate, that does not necessarily entitle the other party to any interest in that property. In Herron, supra, most of the marital property were gifts or inheritance from the wife's father. We noted: "If none of the value of the property is a product of contribution from the marital effort, the District Court can justifiably find that the non-acquiring spouse has no interest in the property." 186 Mont. at 404.

It is clear from the record that none of the cases cited by Robert support his proposition that he has an interest in the Aurora County property in South Dakota. To the contrary, the cases support the court's finding that he had no interest in said property. As to the Davison County farm property, prior to the separation, Robert received a cabin and four lots in Lincoln, Montana, that were paid for by refinancing this farm in South Dakota.

Lastly, under this issue, Robert argues that the award of the family home in Great Falls to Ardis is clearly erroneous because she abandoned the home. The facts in the transcript reveal that such is not the case. She moved out of the home so her daughter, her daughter's husband and their new baby could have a place to live. In addition, she said the memories of the home where such that she felt she had to get away from it for a time. Also by moving into an apartment with Julianne she could make some repairs to the house and benefit from a deduction of rental expenses to the daughter and her daughter's husband. It is clear from the record that the court had several well established reasons for dividing the property as it did. Therefore, we find no error in said division.

The third issue is whether the court erred in making the distribution of marital assets in consideration of Robert's dissipation of the marital assets. While there was considerable testimony relating to how Robert spent his money from various withdrawals and various money he received in managing the farm property in South Dakota, there is no indication that the court decided the distribution of the marital asset on that basis. Ardis testified concerning Robert's poor payment of child support, and the wage assignments which she requested for child support had to wait for months before they were paid. In addition, Ardis testified that he wasted money from a joint checking account and used that money for entertainment. However, testimony went unrebutted, which supported her testimony in the record. Testimony was given to support her allegation that there was waste and dissipation of the assets, but as above

-13-

noted there is no indication that the court relied on this because of the marital misconduct.

Pursuant to section 40-4-202, MCA, the court must consider any dissipation of an estate by one party. Thus, testimony concerning that dissipation is admissible. In addition, the testimony concerning the failure of Robert to regularly pay child support was introduced to show that a wage assignment was ordered. There was sufficient evidence before the trial court to justify the findings upholding its decision as to the third issue.

The fourth issue is whether the court erred in having Robert pay Ardis' attorney's fees. Robert argues they are both employed, earn approximately the same yearly income and that Ardis should pay her own attorney fees. However, it should be noted that most of the attorney's fees were caused by his failure or refusal to pay child support. He refused or failed to agree to simple orders until the day of the hearing when attorneys had to prepare and appear in court. This Court in In re the Marriage of Carr (Mont. 1983), 667 P.2d 425, 40 St.Rep. 1263, 1266 held:

> "This Court has held: 'Traditionally, a showing of necessity has been a condition precedent to the exercise of the court's discretion to award attorney fees. Whitman v. Whitman (1974), 164 Mont. 124, 519 P.2d 966. But the lower court's discretion in the matter will not be disturbed if substantial evidence is found in the record to support the award.' Kaasa v. Kaasa (1979), ____ Mont. ____, 591 P.2d 1110, 1114, 36 St.Rep. 425, 430.
>
> "'Here, the trial court was well aware of the parties' financial situations. It did not abuse its discretion in making an award of reasonable attorney fees, based on necessity. Houtchens v. Houtchens (1979), ____ Mont. ____, 592 P.2d 158, 36 St.Rep. 501, 505.' Bailey v. Bailey

(1979), _____ Mont. _____, 603 P.2d 259,
261, 36 St.Rep. 2162.

> "In the present case the District Court
> was provided ample evidence to determine
> the financial situation of the parties .
> . . "

As in Carr, where this Court upheld the attorney's fees because the husband had a greater salary, held a secure position and had a greater earning potential, we find that the court did not err in finding Robert had a more secure position than Ardis. Ardis was clearly entitled to attorney's fees.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices