No. 14302

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

IN RE THE MARRIAGE OF
JOY V. KAASA,

Petitioner and Respondent,

and

OSBORNE A. KAASA,

Respondent and Appellant.

Appeal from: District Court of the Seventeenth Judicial District,
Honorable Leonard Langen, Judge presiding.

Counsel of Record:

For Appellant:

McKeon and McKeon, Malta, Montana
John C. McKeon argued, Malta, Montana

For Respondent:

Burns, Solem & MacKenzie, Chinook, Montana
William M. Solem argued, Chinook, Montana

Submitted: February 7, 1979

Decided: MAR 7 - 1979

Filed: MAR 7 - 1979

Thomas J. Kearney
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Joy and Osborne (Ozzie) Kaasa were married August 17, 1963. It was the second marriage for both parties. Ozzie's first wife died in 1962, and the two children of the marriage died in 1971. Joy's first marriage ended in divorce, and she had custody of the two children of that marriage until they reached majority, which occurred in 1971 and 1972.

Shortly after the parties were married, they moved into a "primitive", four room house in Dodson, Montana, where they resided for five years. A son, Merle, was born in 1965. In 1968, the Kaasas moved into the family home of Ozzie's deceased wife, located one mile from Dodson.

Ozzie has spent most of his life engaged in farming and ranching. Joy has a high school education, but lacks vocational training. Shortly after Merle was born, Joy began working as a bartender. She held this job for six and one-half years, working full time three of those years. Joy has also worked as a waitress and filling station attendant. At the time of trial, Joy was employed selling cosmetics.

Ozzie's assets at the time of his marriage to Joy consisted of some town lots, approximately 100 head of cattle, 100 acres of irrigated land, and the Kaasa home place consisting of approximately 260 acres of farmland. Shortly thereafter, Ozzie sold the Kaasa farm and purchased another farm consisting of 640 acres. In 1971, Ozzie inherited a one-third share and purchased the remaining two-thirds share of 1,500 acres of land he had been leasing from his deceased wife's family. At the time of divorce, Ozzie's net worth was $440,244.88.

In 1976, Joy inherited approximately $10,000.00, of which $7,000.00 was used to improve the family home. She received an additional $3,900.00 in September 1977. This money was used by Joy for living expenses from September 1977 until April 1978 and to make a trip to Spokane to visit her mother's grave.

Joy filed a petition for dissolution of marriage in District Court, Phillips County, on November 5, 1976. She alleged that the marriage was irretrievably broken without reasonable prospect of reconciliation. A trial was held September 21, 1977, with the Honorable Leonard H. Langen presiding. The court's findings of fact, conclusions of law, judgment and decree were entered February 28, 1978.

Based on an in-chambers interview with Merle, the court determined that custody should rotate between the parents, and the findings contain a monthly formula to this effect. The formula was devised because of Merle's desire to work on his father's farm. Ozzie was ordered to pay $75.00 per month for child support during the months Merle resided with Joy.

The District Court determined that the farm was a working unit which would materially depreciate if it was divided. In order to accomplish its finding that Joy was entitled to one-fourth of the marital estate, or $99,138.00, the court ordered Ozzie to convey the family home to Joy (worth $18,000.00), pay her $10,000.00 within 60 days of the decree, transfer a 1974 Ford pickup to her (worth $3,482.00), and pay Joy the balance of $67,656.00 over a period of 25 years. In addition, Joy was awarded attorney fees of $1,000.00.

Ozzie filed a notice of appeal on March 30, 1978. Shortly thereafter, Joy requested that the District Court order Ozzie to show cause why he should not be required to pay temporary maintenance, support and attorney fees. The District Court, following a hearing on the matter, ruled that it had lost jurisdiction of the case when the notice of appeal was filed, and refused to enter the order. However, the court did recommend that Joy file an application with this Court for a writ of supervisory control. Joy followed the court's recommendation and on July 20, 1978, this Court held in State of Montana ex rel. Joy V. Kaasa v. District Court (1978), ____ Mont. _____, 582 P.2d 772, 35 St.Rep. 1045, "that a District Court has power to award necessary maintenance, child support and suit monies after judgment in a marital dissolution case, where an appeal is taken from the judgment, during the pendency of the appeal." The District Court entered an order on July 24, 1978, awarding Joy temporary maintenance, child support and attorney fees of $1,500.00.

During the hearing on the order to show cause, the parties' son, Merle, asked to have a word with the court in chambers. Merle told the court that he did not want to live with his father while a certain woman was also living in the house. The District Court amended its findings of fact in response to "the special requests" of Merle and ordered that custody would rotate between the parents at Merle's choosing.

Ozzie's appeal, which concerns both the decree of dissolution and the temporary order, raises the following issues:

-4-

1. Did the District Court abuse its discretion in making the property division and distribution?

2. Did the District Court abuse its discretion in determining custody of the minor child?

3. Did the District Court abuse its discretion by requiring Ozzie to pay Joy's attorney fees?

Our scope of review in appeals claiming abuse of a trial court's discretion is set forth in Porter v. Porter (1970), 155 Mont. 451, 457, 473 P.2d 538:

> ". . . [A] reviewing court is never justified in substituting its discretion for that of the trial court. In determining whether the trial court abused its discretion, the question is not whether the reviewing court agrees with the trial court, but, rather, did the trial court in the exercise of its discretion act arbitrarily without the employment of conscientious judgment or exceed the bounds of reason, in view of all the circumstances, ignoring recognized principles resulting in substantial injustice."

Concerning property divisions specifically, this Court has said, "it is well settled that a district court has a far reaching discretion in resolving property divisions and its judgment will not be altered unless a clear abuse of discretion is shown." Eschenburg v. Eschenburg (1976), _____ Mont. _____, 557 P.2d 1014, 33 St.Rep. 1198.

Ozzie contends that Joy's contribution to the marriage does not justify the court's division of property. He argues that Joy did not have a farming and ranching background, and that it was his labor and financing that increased the value of the property.

Recently, in In Re The Marriage of Brown (1978), _____ Mont. _____, 587 P.2d 361, 35 St.Rep. 1733, we said that the wife acquired a vested interest in the ranch property,

-5-

regardless of its source and title. She did so by virtue of her fourteen years as mother, housewife and part-time ranchhand. In Biegalke v. Biegalke (1977), _____ Mont. _____, 564 P.2d 987, 34 St.Rep. 401, an award to the wife of 26% of the value of the marital estate was upheld in a case involving a farming and ranching family. Responding to a contention identical to Ozzie's, Mr. Justice Daly wrote:

> ". . . The statement that she took no active part in the farming as such, is not correct. This kind of selective treatment of the record disregards the testimony of defendant, which is credible and was not refuted, about doing a man's work and wearing out her wedding band chopping wood, turning bales in the field, chasing cattle on foot and most important the assistance rendered while plaintiff was periodically disabled for periods of several months at a time with a chronic disease. The reason she could not spend more time in the fields seems to be due in part to the fact plaintiff blessed her with something like 6 children in 8 years, the care of them somewhat limiting the time a woman could spend out-of-doors." Biegalke, supra at 990.

Finally, the Eschenburg case, although not involving a farming and ranching couple, is applicable here. The District Court equated the wife's contributions as homemaker and mother with the husband's as breadwinner in dividing the property and noted that while the contributions of the wife differed in kind, they were of equal weight to the financial contributions of the husband. Noting that each case depended upon its own facts and circumstances, we affirmed the District Court's distribution of property to a wife who had been married thirty-two years, raised four children, managed the household and volunteered her services to activities related to her husband's career.

In Joy's case, the record shows she made substantial contributions during twelve years of marriage to Ozzie.

-6-

Joy "performed the household chores of cooking, housekeeping and looking after all of the children including husband's two children by his first wife." She was employed during a major portion of the marriage and her income was used to purchase groceries and clothing. Joy also performed chores when asked by Ozzie. For example, she helped move cattle out to pasture, hauled cattle by trucks, helped with branding, cooked for the crews, raised chickens and was responsible for the family garden. We find that sufficient evidence exists in the record upon which the District Court could reasonably have relied to make the property division.

Ozzie contends the District Court improperly considered a financial statement, dated May 27, 1975, to determine the value of his farmland, rather than using a balance sheet prepared for the divorce proceedings by his accountant. It is true that the court must consider the current value of all property acquired during the course of the marriage, Kruse v. Kruse (1978), ____ Mont. _____, 586 P.2d 294, 35 St.Rep. 1502, as Ozzie argues. However, that is precisely what the District Court did here. Finding that the land values in the financial statement (which had been used in an application for credit) were inflated and that values given the land in the balance sheet (which had been prepared especially for the divorce proceedings) were low, the District Court averaged the figures to arrive at the present value of the land. We find that this procedure was not unreasonable under the circumstances.

Ozzie's contention that the District Court failed to consider Joy's inheritance is without merit. Finding of fact XV states:

-7-

"Wife inherited $10,000.00 from her
mother and expects to receive an additional
$4,000.00 from her mother's estate. Wife
has invested approximately $7,000.00 of
this sum in making improvements in the house
situated on the Eroux property. Wife holds
no real or personal property in her own
name."

The District Court complied with section 48-321(1),
R.C.M. 1947, now section 40-4-202 MCA, by considering
the inheritance in making the property division.

Turning to the issue of Merle's custody, the rule
set forth in In Re Marriage of Kramer (1978), ____ Mont.
_____, 580 P.2d 439, 35 St.Rep. 700, is controlling:

"We are committed to the view that the
welfare of the children is the paramount
consideration in awarding custody.
Lee v. Gebhardt, (1977), ____ Mont. _____,
567 P.2d 466, 34 St. Rep. 810; Schiele
v. Sager, (1977), ____ Mont. _____, 571
P.2d 1142, 34 St. Rep. 1358. We believe
the welfare of the children, particularly
children of the ages involved here [11, 13, and
15], is not being served if their wishes are
not considered by the trial court. Therefore,
we hold the court should make a specific
finding, stating the wishes of the children
as to their custodian, and, if the court
determines that the children's wishes are
not to be followed, the court should state
in its findings the reason it has chosen
not to follow their wishes."

It is true, as Ozzie contends, that the District
Court did not make a specific finding in the decree
concerning Merle's wishes. However, on April 20, 1978,
the court amended its finding on Merle's custody, and
at that time stated Merle's wishes, thereby satisfying
the requirement set forth in Kramer. The District Court's
amended finding is controlling.

Finally, Ozzie challenges the award of attorney
fees to Joy in the decree of dissolution and the temporary
order.

The Uniform Marriage and Divorce Act, at section
48-327, R.C.M. 1947, now section 40-4-110 MCA, provides:

"Costs--Attorney's fees. The court from
time to time after considering the financial
resources of both parties may order a party

> to pay a reasonable amount for the
> cost to the other party of maintaining
> or defending any proceeding under this
> act and for attorney's fees, including
> sums for legal services rendered and costs
> incurred prior to the commencement of the
> proceeding or after entry of judgment.
> The court may order that the amount be paid
> directly to the attorney, who may enforce
> the order in his name."

Traditionally, a showing of necessity has been a condition precedent to the exercise of the court's discretion to award attorney fees. Whitman v. Whitman (1974), 164 Mont. 124, 519 P.2d 966. But the lower court's discretion in the matter will not be disturbed if substantial evidence is found in the record to support the award. Brown, 587 P.2d at 367.

Joy testified that she had approximately $12.00 in her bank account at the time of trial. She was working as a cosmetic products saleslady with an income of $100.00 to $125.00 per month. Of the inheritance, $7,000.00 had been used previously to make improvements on the house and the remainder had been used for subsistence prior to trial. The $3,900.00 Joy received after trial was used for living expenses until temporary maintenance was provided.

Ozzie did not pay all of Joy's attorney fees. After considering the financial resources of both parties, the court decided that Ozzie should "contribute" $1,000.00 and subsequently $1,500.00 toward the payment of Joy's attorney fees. We find that necessity was shown and that the District Court did not abuse its discretion by requiring Ozzie to assist Joy in the payment of her attorney fees.

Affirmed.

_____
                    Justice

-9-

We Concur:

_Frank J. Haswell_
Chief Justice

_Gene B. Daly_

_John Conway Harrison_

_Daniel J. Shea_
Justices