No. 14718

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

WILLIAM O. PENN,

                    Plaintiff and Appellant,

        vs.

BURLINGTON NORTHERN, INC.,
a corporation, and The State
of Montana,

                    Defendants and Respondents.

Appeal from:  District Court of the Sixteenth Judicial District,
              Honorable A. B. Martin, Judge presiding.

Counsel of Record:

    For Appellant:

        Allen Beck argued, Billings, Montana

    For Respondent:

        Kurt W. Kroschel argued, Billings, Montana
        P. Keith Keller argued, Helena, Montana

                        Submitted:  December 11, 1979

                        Decided: JAN 2 3 1980

Filed:  JAN 2 3 1980

_____ Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Appellant Penn brought a cause in the District Court, Sixteenth Judicial District, Rosebud County, to recover damages for injuries suffered in an automobile-train accident. Penn appeals from a jury verdict in favor of respondents, Burlington Northern, Inc. and the State of Montana.

We note that this cause arose before the Montana comparative negligence statute, section 27-1-702, MCA, took effect. Consequently, any contributory negligence by Penn that proximately caused his injuries would bar his recovery of damages from the State and Burlington Northern. Dunham v. Southside National Bank (1976), 169 Mont. 466, 548 P.2d 1383; DeVerniero v. Eby (1972), 159 Mont. 146, 496 P.2d 290.

In June 1975, Penn was working as a pipefitter in Colstrip, Montana. On June 11, 1975, Penn decided to drive to Miles City, Montana after work to purchase new tires for his 1975 Ford van. Jerry Dewey and Martin Kussler, friends of appellant, went along for the ride. The trip to Miles City was uneventful. After the new tires were put on Penn's van, the three men purchased a six pack of beer for the road and set out on the return trip to Colstrip. At approximately 8:30 p.m., the three men stopped for dinner at the Gausthauf Bar in Forsyth, Montana. After dinner of beer and pizza, Dewey and Kussler began playing pool and Penn went to a friend's home to sleep. Approximately one hour later, Penn was awakened by friends who suggested that he return to the Gausthauf to join Dewey and Kussler. Penn returned to the Gausthauf.

At an undetermined time, Penn left the Gausthauf to sleep in his van. Dewey and Kussler remained in the Gausthauf drinking beer and playing pool. Later, Kussler joined Penn in the van. At approximately 1:30 a.m., Dewey returned to the van. Dewey began driving back to Colstrip with Penn and Kussler asleep in the back of the van.

Dewey testified that as a matter of habit he would ask the owner if he could drive the owner's car and that he thought that he had asked Penn on the night in question. Penn has no recollection of any events from the time he arrived at the Gausthauf until he awoke in the hospital several days after the accident.

The accident occurred south of Forsyth on Highway 315 at the Koselka crossing, where the railroad track parallels the road before crossing it at a sharp angle. The crossing itself is located at a creek bottom and is visible from the crest of a hill 879 feet north of the crossing. There is a drop of about 25 feet in altitude from the crest of the hill to the crossing.

A reflectorized warning sign is located 796 feet from the crossing, and there are reflectorized crossbucks at the crossing itself. Both warning devices are visible from the crest of the hill. Additionally, seven reflectorized panels and the reflectorized logo of the railroad company are located on the side of each coal car.

At the time of the accident, the train was traveling approximately 27 miles per hour, and the van was going 50 miles per hour. A vehicle traveling 50 miles per hour from the crest of the hill would reach the crossing in about 12 seconds. Fifty seconds prior to the accident, the front of the locomotive was 1,850 feet from the van. The locomotive

was equipped with a 200,000 candlepower light visible at that distance, and there was no impediments to its visibility. The light was aimed at the van until 34 seconds prior to the accident, when the locomotive and van passed each other. The van struck the thirty-fifth car from the Burlington Northern coal train caboose. There were no skid marks or other indications of evasive action. Most of the van was in the left lane of traffic at the time of impact.

The investigating highway patrolman found seventeen empty beer cans and one empty bottle in and around the van. Dewey, the driver, consented to a blood sample a few hours after the accident. It revealed a blood-alcohol level of .16%. An expert witness estimated Dewey's blood-alcohol level at the time of the accident to be .20 to .21%. The presumptive level of intoxication in Montana is .10%. Section 61-8-401(3)(c), MCA.

As a result of the accident, Penn lost his gall bladder, is paralized below the waist, and suffers neurological problems. Dewey received a broken hip, a collapsed lung and a severe scalp wound. Kussler was killed.

Penn raises nine assignments of error for review. We hold in favor of respondents on all the assignments of error.

In his first assignment of error, Penn contends that the District Court erred in permitting the respondents to proceed on a theory of negligent entrustment. Penn asserts that in Montana negligent entrustment may only be used as a theory of recovery, not as a defense since it involves an application of imputed contributory negligence. Such a contention is without merit. Here, respondents pleaded negligent entrustment as a type of contributory negligence,

-4-

imputed to Penn as the entrustor, not to the entrustee, Dewey. Respondents were not trying to impute the negligent acts of the driver to Penn, the passenger and owner of the van.

The Restatement (Second) of Torts supports negligent entrustment as a defense when used as a species of contributory negligence. The Restatement provides that an actor is negligent if he allows a third party to use an object under the actor's control when the actor knows, or has reason to know, of an unreasonable risk of harm to others. Restatement (Second) of Torts §§308, 390 (1965).

The second assignment of error Penn asserts is that the District Court Instruction No. 25 failed to charge the jury properly on the elements of negligent entrustment. Penn, however, failed to object to the instruction at trial. The contention that an instruction does not state the law cannot be considered absent a proper objection at trial. Roberts Realty Corp. v. City of Great Falls (1972), 160 Mont. 144, 500 P.2d 956.

The third assignment of error asserted is the District Court's failure to admit a petition of the Rosebud County Commissioners and other documents concerning the warning devises at the Koselka crossing. Penn maintains the absence of these evidentiary documents precluded him from establishing notice as an element of negligence and the necessary state of mind for an award of punitive damages.

Prior to trial, both parties moved in limine to exclude certain documents including those at issue now. At the hearing on these motions, Penn agreed the documentary evidence was unnecessary if the State and Burlington Northern would admit to the date they received notice of the dangerous

-5-

nature of the crossing. Although Penn stated that he wished to preserve his position regarding the admissibility of the documents, all parties entered into a stipulation regarding the date of notice. The stipulation was before the jury, and Penn failed to offer the petition or other relevant documents into evidence or make any offer of proof at trial.

The stipulation entered into by Penn forecloses a review of this issue. It is improper to raise an issue upon appeal as to a question of law or fact after the parties have entered into a stipulation as to that law or fact. Oregon Automobile Insurance Company v. Watkins (1973), 264 Or. 464, 506 P.2d 179.

The fourth assignment of error is that the District Court erred in permitting defense witness Van Schwartz to testify at trial concerning his observations from an experiment. Penn contends Van Schwartz lacked the necessary qualifications to testify as an expert witness and the experiment was conducted under different conditions from those existing at the time of the accident.

Penn cannot assert Van Schwartz's lack of qualifications as a ground for reversal since his objection on this ground was not timely. At trial, Penn objected to testimony concerning Van Schwartz's observations long before any such testimony was given. He made no objection once Van Schwartz began to testify about his observations. Sikorski v. Olin (1977), ___ Mont. ___, 568 P.2d 571, 34 St.Rep. 1042. Similarly, Penn cannot complain upon appeal that the experiment was conducted under conditions different from those on the night of the accident since differing conditions was not a

ground for his objection at trial.  Hayes v. J.M.S. Const. (1978), ___ Mont. ___, 579 P.2d 1225, 35 St.Rep. 722.

In his fifth and sixth assignments of error, Penn asserts it was error for the District Court to refuse to give plaintiff's Instruction Nos. 24 and 31, which would have charged the jury that the State and Burlington Northern were negligent as a matter of law.

Section 61-8-202, MCA requires the Department of Highways to adopt the regulations contained in the Manual on Traffic Control Devices.  Penn maintains that in light of this statutory requirement, it is clear that the Manual has the force and effect of law.  Thus, he contends that the State was negligent as a matter of law in failing to signalize the Koselka crossing in accordance with the Manual. Similarly, section 69-14-602, MCA imposes a duty on railroad companies to construct and maintain "good and safe" crossings. Penn asserts Burlington Northern was negligent as a matter of law by violating section 69-14-602, MCA, in that it failed to install the types of warning devices required by the Manual at extra-hazardous crossings.

Penn's contentions are not convincing.  Before respondents can be charged with negligence in violating the Manual, it must first be determined:  (1) that the Koselka crossing was extra-hazardous, and (2) that failure to install additional warning signals was the proximate cause of Penn's injuries. These were questions of fact for the jury since conflicting evidence was offered at trial.  Additionally, in Montana, the Manual does not have equal dignity with statutory law. There must be evidence that the Highway Commission directed the installation of additional warning signals before Burlington Northern can be charged with a duty to make such installations.

Williams v. Maley (1967), 150 Mont. 261, 434 P.2d 398.
There is no evidence in the record that the Highway Commission issued such a directive.

Penn's seventh assignment of error is the District Court's failure to charge the jury that the Public Service Commission was negligent as a matter of law. In April 1973, the Rosebud County Commissioners presented a petition to the Railroad Commission, now the Public Service Commission, requesting installation of warning devices at the Koselka crossing. Penn contends the Public Service Commission's failure to issue any order whatsoever violated section 69-14-622(2), MCA and constituted negligence per se on the part of the State.

We conclude it was not error to refuse plaintiff's Instruction No. 32, the Public Service Commission instruction. Such an instruction would have injected an issue upon which neither side had offered any evidence. It is not error to refuse an instruction that is not supported by the evidence admitted at trial. Porter v. Crum-McKinnon Bldg. Co. (1963), 142 Mont. 74, 381 P.2d 794. Furthermore, the Public Service Commission's failure to issue any order, even one refusing to order installation of warning devices, has no relevance to causation in this case.

In his eighth assignment of error, Penn asserts Court's Instruction No. 26 concerning assumption of risk was incorrect as a matter of law. Penn maintains the facts of this cause do not involve the type of negligent behavior to which assumption of risk applies. Penn contends that assumption of risk applies only to a relationship between a plaintiff and a defendant, not between a plaintiff and a third party. He further asserts that it is insufficient to point to the

negligence of Dewey, the driver, and Penn's assumption of Dewey's negligent operation of his van.

We cannot agree with Penn's contentions. Court's Instruction No. 26 was adapted from Montana Jury Instruction Guide No. 13.00 and is a correct statement of Montana law as it existed at the time this cause arose. See Hoffman v. Herzog (1971), 158 Mont. 296, 491 P.2d 713. Conflicting evidence was admitted at trial as to whether Penn assumed the risk of his injuries by riding with an incompetent driver. Thus, the instruction was proper.

Penn's ninth assignment of error is that the District Court erred in determining that the respondents were not liable for punitive damages. On October 11, 1978, the District Court entered an order striking Penn's claim against the State for punitive damages on the ground that section 82-4324, RCM (1947) disallowed punitive damages against the State.

Similarly, on the last day of the trial, respondents objected to Penn calling a witness to establish the financial condition of Burlington Northern as a measure by which punitive damages could be assessed. The District Court sustained the objection on the ground that there was insufficient evidence to submit the issue of punitive damages to the jury.

Penn contends these rulings, when combined with the District Court's failure to admit into evidence the petition of the Rosebud County Commissioners, precluded Penn from pursuing that portion of Penn's cause regarding an award of punitive damages. As previously noted, Penn entered into a stipulation regarding the petition of the Rosebud County Commissioners, and that stipulation was before the jury. Having entered into the stipulation, Penn cannot now claim

prejudice from his failure to have the petition admitted at trial.  See Oregon Automobile Insurance Company, supra.

The jury returned a verdict of no liability for actual damages on the part of the State and Burlington Northern. Such a verdict precludes an award of punitive damages, thus Penn suffered no harm from the District Court's ruling regarding punitive damages.  Herdengen v. Oxarart (1963), 141 Mont. 464, 378 P.2d 655.

Having found no substance to Penn's assignments of error, the jury verdict in favor of the State and Burlington Northern is affirmed.

_____
Justice

We concur:

_____
    Chief Justice

_____
    Justices

Mr. Justice John C. Sheehy deems himself disqualified in this case.  Following oral argument herein, Justice Sheehy learned that one of his former associates may have represented a party having a collateral claim arising out of the incident on which this case is based.  Since it appears that such relationship of attorney-client existed before he

came on the Court, Justice Sheehy has taken no part in the decision or opinion herein.

Mr. Chief Justice Frank I. Haswell and Justice Daniel J. Shea concur in the result.

_____
Chief Justice

_____
Justice