No. 79-27

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

VIVIAN S. COOK,

Petitioner and Respondent,

-vs-

ALFRED C. COOK,

Respondent and Appellant.

---

Appeal from: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin, The Honorable
W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellant:

Ann L. Smoyer, Helena, Montana

For Respondent:

Keller, Reynolds, Drake, Sternhagen and Johnson,
Helena, Montana

---

Submitted on Briefs: May 27, 1980
Decided: JUL 17 1980

Filed: JUL 17 1980

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal arises out of a proceeding for a dissolution of marriage and the equitable apportionment of assets of a marital estate filed in the District Court of the Eighteenth Judicial District, the Honorable W. W. Lessley presiding. Appellant husband appeals from the District Court's apportionment of the marital estate.

Appellant husband and respondent wife were married in Bozeman, Montana, on December 11, 1955. On October 18, 1977, after twenty-two years of marriage, wife petitioned the court for a dissolution of marriage and the equitable apportionment of assets of their marital estate. At the time of the filing of the petition, husband was 45 years old and wife was 42 years old. Husband had a college education and worked in various occupations during the marriage: foreman and ranch hand, insurance agent, teacher, and automobile salesman. Wife had approximately two years of college and worked primarily as a housewife, although she was employed at different times throughout the marriage as a waitress, newspaper reporter, and retail clerk.

Five children were born to the parties during their marriage. One child, Kevin, is a minor who presently lives with wife in Helena, Montana. Three children have attained the age of majority, and the remaining child died in an accident during the marriage.

The assets accumulated by the parties during the marriage include a family home in Bozeman, two cars, a motorcycle, several shares of corporate stock, a boat, home furnishings, clothing and other incidental items of personal property. In 1965, wife also received an inheritance from

her grandmother, Ada Smith. The inheritance consisted of a cash bequest, which was used for family expenses, and a remainder interest in certain farm and ranch land near Saco, Montana (hereinafter referred to as the Smith Ranch). The value of the land was stipulated by the parties as being between one and two million dollars before taxes. The interest is subject to a life estate held by wife's father, Hugh C. Smith. From this interest, the parties have received approximately $39,554.15 in the form of mineral royalty payments and life estate principal and income distribution. These proceeds have also been applied toward family living expenses.

During the marriage, husband left a $5,500 teaching contract in White Sulphur Springs in 1958, and the parties moved to the Smith Ranch, where husband worked as foreman and ranch hand. Husband continued in this capacity for six years at a salary of $250 per month plus housing. During this time an additional 100 acres of wheat were put into production. In 1964, because of financial reasons, the parties moved from the ranch into the town of Saco, where husband taught vocational agriculture in the public school system. In 1971, because of wife's desire to leave Saco, the parties moved to Bozeman. Husband cashed his teacher's retirement fund and some smaller life insurance policies to finance the move.

Wife presently works as a clerk in state government in Helena, Montana. Husband is presently unemployed, having been terminated from his job in early 1977 and working for only four months in 1978. Husband has suffered both emotional and physical problems since the parties' separation and has incurred substantial medical and hospital expenses.

-3-

The marriage of the parties was dissolved by the District Court on April 10, 1978. The court apportioned the assets of the marital estate on February 15, 1979. Several of the assets were distributed pursuant to a stipulation of the parties. An agreement was made between the parties to equally split that portion of the proceeds which represented equity resulting from the sale of their Bozeman residence. That figure amounted to approximately $11,200. With respect to the other assets, the parties stipulated, with the exception of a few items, who was to receive each asset, but left the particular valuation of each asset to the court. The property was distributed and valued by the District Court in the following manner: Wife was awarded a 1967 model car (less than $1,000); a wedding ring ($800); home furnishings (unvalued); china closet (unvalued); clothing and other incidental items of personal property. Husband received a 1977 Buick Riviera automobile ($3,500); a Honda 90 ($150); a boat ($2,700); corporate shares of stock (unvalued); home furnishings (unvalued); clothing and other incidental items of personal property in his possession. It should be mentioned that the District Court noted in its findings that husband paid remaining purchase money mortgages on the 1977 car and the boat out of the proceeds received from the sale of the house.

The District Court further found that husband had not contributed to the maintenance of wife's remainder interest and awarded her sole ownership of the interest on the basis of the property distribution and as an alternative to maintenance. The District Court ordered husband to assume the remaining debts of the marriage, pay $110 per month for the support of the parties' minor child until he reached the age of majority and pay wife's attorney fees.

We consider three issues on appeal:

1. Whether the District Court erred or abused its discretion in apportioning the assets of the marital estate?

2. Whether the District Court erred in awarding wife sole ownership of the remainder interest as an alternative to maintenance?

3. Whether the District Court erred in ordering husband to pay wife's attorney fees?

The first issue raises the question of whether it is necessary for a District Court in a dissolution proceeding to first place a value upon all of the assets within a marital estate and determine the net worth of the parties before distributing property within that marital estate. In this case, the District Court distributed the marital estate without determining the net worth of the parties or valuing the following items of the marital estate: the china closet, the corporate shares of stock, and the home furnishings received by husband and wife.

Husband contends it was error for the court to apportion the assets without undertaking such preliminary matters. Husband relies upon several cases in which this Court has stressed the importance of valuing assets and determining the net worth of parties in dissolution proceedings before distributing property within the marital estate. See Herring v. Herring (1979), ___ Mont. ___, 602 P.2d 1006, 36 St.Rep. 2052; In Re Marriage of Brown (1978), ___ Mont. ___, 587 P.2d 361, 35 St.Rep. 1733; Martinez v. Martinez (1978), 175 Mont. 280, 573 P.2d 667, 35 St.Rep. 61.

Wife argues that the District Court did not err in apportioning the assets of the marital estate. She asserts there was no need for the District Court to concern itself

with the valuation of certain assets or with the determination of the net worth of the parties because there was a stipulation entered into between the parties regarding the distribution of assets. Wife contends, because of the stipulation, that this case is distinguishable from the authority relied upon by husband. Further, on the basis of Penn v. Burlington Northern, Inc. (1980), ____ Mont. ____, 605 P.2d 600, 37 St.Rep. 93, wife contends that husband is precluded from raising any issues relating to the stipulation on appeal.

In Penn both parties agreed that certain documentary evidence did not need to be introduced at trial if the railroad would admit that it had notice of the dangerous nature of a railroad crossing. The railroad admitted notice, and the plaintiff did not attempt to introduce the documents for other purposes at trial. On appeal, however, the plaintiff argued that the evidence was relevant to the issue of notice and punitive damages. We refused to consider that issue, however, because of the stipulation.

The transcript very clearly indicates in this case that there was a stipulation entered into between the parties. However, the transcript further indicates, unlike Penn, that the stipulation was limited in nature. The parties here agreed only as to which party would receive particular assets and not to a particular valuation. The valuation of assets was left to the court. The following colloquy occurred at the beginning of the trial:

"THE COURT: This is the time set by the Court and Counsel of Record in 24041 to hear the matter of property division and gentlemen you may proceed.

"MR. KOMMERS: Thank you, your Honor, I represent the petitioner and I have some proposed findings

-6-

for the Court and I realize that some of these will have to be changed, but I submit that now. The Petitioner and Respondent in this matter have reached agreements with respect to several matters in dispute here, and we would stipulate for the record that the following items are true and need no proof. With respect to the personal properties acquired by the couple during the term of the marriage, property has been divided and the Petitioner is in possession of a 1967 automobile, home furnishings, and a wedding ring, and the Respondent is in possession of a 1977 Buick Riviera automobile, a Honda 90, a certain number of Life and Montana corporate shares, a boat, and certain home furnishings. <u>The</u> <u>evaluation</u> <u>of</u> <u>the</u> <u>property</u> <u>could</u> <u>not</u> <u>be</u> <u>agreed</u> <u>to</u> <u>by</u> <u>the</u> <u>parties</u> <u>and</u> <u>will</u> <u>be</u> <u>provided</u> <u>in</u> <u>testimony</u> <u>before</u> <u>the</u> <u>Court</u> <u>today</u>.

"With respect to real estate acquired by the parties during the term of the marriage, it is agreed to be true and requires no further proof that the home consisted of real estate. The family home consisted of real estate acquired by them which was sold for the fair market value of $55,400 at which Petitioner and Respondent share equally in the net proceeds in the amount of approximately $11,458.86. That with respect to other sources of income of the parties and it is at issue today with respect to the future interest of Petitioner, the parties have agreed on a valuation of monies received from the estate of Ada Smith, and that these monies were received and used by the couple equally during the term of the marriage . . ." (Emphasis added.)

Here, counsel did not agree to an overbroad stipulation. There was no agreement, for example, that the distribution of assets would remain the same if the value of the estates received by each individual party were inequitable and disproportionate. To the contrary, the stipulation was well-defined and limited. Assuming that the court would undertake a division of property that was equitable, the parties only agreed as to who would receive particular assets and left the valuation of the assets to the court. Under these circumstances, we find that husband is not precluded from raising his arguments on appeal.

This Court has held in many previous cases that, before a trial court may properly apportion the assets of a marital

estate, it must first determine the net worth of the parties. Herring, supra; Brown, supra; Martinez, supra. We have also stressed the importance of valuing each asset of the marital estate. In Herring, where the District Court made no findings as to the net worth of the parties or as to the present fair market value of the substantial assets of the marital estate, we remanded and stated:

> "We have held in a number of cases that, before there may be a proper distribution of marital property, the District Court must first determine the net worth of the parties. [Citations omitted.] Here, the District Court made no such finding. While the District Court did indicate that the only significant assets were the diamond rings and the lot and the home, there was no attempt to place a present, fair market value upon these items or to determine the net worth of the parties at the time of their divorce." Herring, 602 P.2d at 1007, 36 St.Rep. at 2054. (Emphasis added.)

In Martinez, where it was argued that we should take judicial notice of certain property values by looking to state appraisals because no evidence was introduced regarding property values at trial, we stated:

> "Whether or not in retrospect these figures provide an accurate indication of fair market value of the Billings property, however, begs the issue. Section 48-321, R.C.M. 1947, requires the trial judge to consider the property values. Neither the appraised valuation nor the assessed valuation were introduced as evidence at trial; nothing in the judge's findings of fact or conclusions of law shows that he ever considered the assessed or appraised value of the land prior to his property disposition order.
>
> "Respondent also maintains that the Mexican property is irrelevant to the property disposition because it is of negligible value and because a Montana District Court is of no effect in Mexico. The record is silent as to the value of the Mexican property. The Mexican property is relevant to a property distribution because, although Montana Court orders encumbering or transferring title to Mexican property may be of no legal effect in Mexico, that Mexican property still is of value to the owner, is part of the owner's estate, will affect the owner's future needs and therefore must be considered under section 48-321." Martinez, 573 P.2d at 669-670, 35 St.Rep. at 64. (Emphasis added.)

-8-

We find in this case that the District Court erred in not placing a value upon the aforementioned items of the marital estate and in not determining the net worth of the parties at the time of their divorce. The valuation of assets and the determination of net worth are two important steps which must be made by District Courts in the apportionment process, regardless of whether parties enter into any stipulations concerning their marital estate. From these determinations, a basis is provided from which a District Court may make, or an appellate court may decide, that an apportionment is equitable. Without these determinations, the equitable distribution of marital assets amounts only to guesswork. This case must, therefore, be remanded to the District Court so that the parties' marital estate may be distributed on this basis.

By our decision today, we mean in no way to discourage parties in dissolution proceedings from entering into stipulations such as the case here. To the contrary, stipulations provide an economical and efficient way to handle such proceedings. We intend only to reemphasize the importance of taking certain preliminary steps before property is distributed. Where parties cannot agree as to the value of a particular asset, we further encourage counsel to provide ample testimony for the District Court regarding values. Despite the statements of counsel, that was not done here.

The remaining issues in this case are directly affected by and intertwined with our holding regarding husband's first issue. The second issue concerns whether the District Court erred in awarding wife sole ownership of the remainder interest on the basis of the property distribution and as an alternative to maintenance. The District Court found:

"The Court concludes that the respondent has made no contributions which have facilitated maintenance or [sic] the property subject to the life estate and petitioner's remainder interest, and therefore, has no claim for any portion of petitioner's remainder interest. Petitioner should retain sole ownership of the remainder interest. This award constitutes a portion of the property disposition and as an alternative to maintenance arrangements in favor of petitioner which would otherwise be required from the respondent."

Husband's primary argument is that he is entitled to a portion of the remainder interest because of his contributions while working on the Smith Ranch and his sacrifices in surrendering employment opportunities to accommodate his wife's desire to move. We decline to rule upon this issue in view of our holding in the first issue and leave husband's arguments to the District Court for consideration on remand. Whether wife is entitled to sole ownership of the remainder interest, especially as an alternative to maintenance, depends upon the property distribution. Maintenance is properly awarded only after the property is apportioned between the parties. In Re Marriage of Herron (1980), \_\_\_\_ Mont. \_\_\_\_, 608 P.2d 97, 102, 37 St.Rep. 387, 394; Vivian v. Vivian (1978), \_\_\_\_ Mont. \_\_\_\_, 583 P.2d 1072, 1075, 35 St.Rep. 1359, 1362. The spouse seeking maintenance must lack sufficient property to provide for his/her reasonable needs and be unable to support himself/herself through appropriate employment or be the custodian of a child whose conditions or circumstances make it appropriate that the custodian not be required to seek employment outside the home. Section 40-4-203(1), MCA.

Conceivably, on remand, when the District Court places a value upon all of the assets of the marital estate and determines the net worth of the parties, the findings may reveal that a different apportionment is appropriate. In

-10-

this connection, if the court finds that the award of the remainder interest to wife is appropriate partly as an alternative to maintenance, it should make findings pursuant to section 40-4-203(1), MCA. Those findings are not present here.

The third issue in this case concerns whether the District Court erred in ordering husband to pay wife's attorney fees. For attorney fees to be awarded in dissolution proceedings, necessity must be shown. In Re Marriage of Kaasa (1979), ___ Mont. ___, 591 P.2d 1110, 1114, 36 St.Rep. 425, 430. Here again, whether wife is able to demonstrate necessity for an award of attorney fees depends to some extent upon the court's apportionment of marital assets. In this regard, we also note that while husband was terminated from his job in 1977 and worked for only four months in 1978, wife is presently employed. We leave this issue to the District Court for consideration on remand.

This cause is remanded to the District Court to proceed in accordance with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____
Justice

Mr. Justice John C. Sheehy and Mr. Justice Gene B. Daly dissent and will file a written dissent later.

-11-

DISSENT

No. 79-27

---------------------------------------------------------------

COOK V. COOK

---------------------------------------------------------------

Opinion handed down July 17, 1980 and authored by Mr. Justice

John C. Harrison--Dissent authored by Mr. Justice John C.

Sheehy and Mr. Justice Gene B. Daly

---------------------------------------------------------------

DATED:

November 7, 1980

FILED

NOV - 7 1980

*Thomas J. Kearney*

CLERK OF SUPREME COURT
STATE OF MONTANA

Mr. Justice John C. Sheehy and Mr. Justice Gene B. Daly dissenting:

What does Alfred Cook hope to accomplish by this appeal? He hopes to receive a portion of Vivian's inheritance. He recites in his brief:

> "Thus, Vivian's inheritance, received during the pendency of her marriage to Al, was a marital asset to be apportioned equitably as required by 48-321, R.C.M. 1947--40-4-202, MCA. It should also be noted that this section also requires a valuation of the wife's estate at the time of the divorce, even though a portion of the estate may be subject to distribution by her death."

What inheritance of the wife is Alfred Cook talking about? Under the terms of the probated Will of Ada Smith, the grandmother of Vivian Cook, Ada Smith left her residuary estate to her son, Hugh C. Smith, during his natural life, and upon his death to his five children, including Vivian Smith Cook, the respondent here.

We are told that the total estate has a value of between $1 to $2 million and it is obvious that Vivian's share is one-fifth of whatever value the estate may eventually have, pre-supposing that Vivian Cook outlives her father Hugh C. Smith. At the time of the dissolution of the marriage, and the order of the court dividing the property, although Vivian Cook was the vested remainderman in a one-fifth interest in the estate, subject to the life estate of her father, she has absolutely no right in the estate until his death and if she predeceases her father, her share will descend to her children by virtue of other provisions in the Will of Ada Smith.

By any ability that we have to judge, the value of her remainder estate at the time of the dissolution of the marriage was nil. She had no right to dispose of any of the underlying assets comprising the remainder estate unless she had met someone who had recently purchased the Brooklyn Bridge.

-12-

This is not a case which requires the application of section 40-4-202, MCA, regarding the factors to be considered by the court in the determination of a fair division of property. The reason is that in this case, the parties had stipulated between them as to the respective spouses to whom their items of property would go.

In Morse v. Morse (1977), ____Mont. ____, 571 P.2d 1147, 34 St.Rep. 1334, this Court stated that the possibility of receiving future monies by a spouse could not be considered by the court and specifically the court refused to consider the possibility that the wife would receive an inheritance from her mother sometime in the future.

The District Court specifically found in finding of fact no. 13 that "the respondent has made no contributions which have facilitated maintenance of the properties subject to the life estate of Hugh Smith and the remainder interest of the petitioner." The value of the remainder interest therefore, if it had any, was quite beside the point. The District Court did Alfred Cook a favor when it provided that the wife should receive no maintenance from Alfred Cook in view of her possible remainder interest.

The remaining unvalued items are a china closet, household furnishings and corporate stock which was awarded to Alfred Cook. His dissatisfaction arises, if we may believe his brief, from the situation that "here the wife's inheritance may exceed the worth of all other material assets combined and it is certainly a major asset whether it is considered a marital asset or part of her estate. Thus, 'to deny the husband a share of the wife's inheritance would stand on the same footing as denying the wife a share of the large sum in windfall profits from the husband's business or investments acquired just prior to the divorce.'" Alfred Cook's premise is groundless. He may not count a marital asset a future conditional interest not in the possession of his wife at the time of the marital dissolution. The majority has failed to grasp at this point.

The futility of remand here is manifest. The District Court on reconsideration will assign a minimum value to the future interest, award that future interest to the wife because it has no other legal option and provide that such future interests shall be in lieu of maintenance for the husband. We have assigned to the District Court the performance of a useless task.

Under Rule 52(a), M.R.Civ.P., the findings of the District Court should not be set aside unless clearly erroneous. We do not see any error in the way this matter was handled by the District Court, in view of the stipulation that the parties adopted respecting the distribution of the property. A factor which makes the decision of the majority seem even worse is that Alfred Cook made no effort to bring before the District Court a valuation of the future interest, although he now complains that the District Court made no such valuation. This is the trial testimony from Alfred Cook respecting that point:

> "Q. Did you obtain an appraisal of the property that is covered by the future interest? A. I did not.
>
> "Q. And what was the reason for not obtaining the appraisal? A. Really, when this first started, I saw no need for it, and the provisions and what was promised by me, I didn't see any need for an appraisal. Later, I could see no need for it and probably because of the expense, it was not deemed unnecessary to have it appraised as that is not what is important."

The position of the majority in this case is inexplicable. We would affirm on all counts.

_____
                  Justice

_____
                  Justice