No. 95-566

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IN RE THE MARRIAGE OF

DEBRA S. O'NEIL,

     Petitioner and Respondent,

    v.

THOMAS E. O'NEIL,

     Respondent and Appellant.

FILED

JUN 04 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John Larson, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

     Richard R. Buley, Tipp & Buley, Missoula, Montana

     For Respondent:

     Paulette Ferguson, Missoula, Montana


Submitted on Briefs:  April 25, 1996

Decided:  June 4, 1996

Filed:

_____
         Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Thomas E. O'Neil appeals from this dissolution of marriage entered in the Fourth Judicial District Court, Missoula County. We vacate in part and remand.

The dispositive issue is whether the court erred in its valuation of the marital estate.

In 1986, just prior to his marriage to Debra S. O'Neil, Thomas E. O'Neil sold homes he owned in Seattle, Washington, and Twin Falls, Idaho, and land he owned in Lake Tahoe, Nevada. With $110,000 in proceeds from those sales and some cashed-in retirement benefits, he purchased the Lumberjack Saloon in Missoula County, Montana. Debra S. O'Neil then quit her job with a telephone company in Idaho and moved to Montana to join Thomas. The couple married in August 1986.

Both Debra and Thomas worked at the Lumberjack Saloon for several years and contributed money to that enterprise. They also purchased real property and a mobile home near Lolo, Montana. In September 1992, they sold the saloon on a contract. However, the buyers defaulted and Thomas and Debra retook possession of the saloon.

After the parties separated in 1994, Thomas resold the saloon, again on a contract. He used the cash proceeds of the second sale to open a tile business in Twin Falls, Idaho. Payments on the second Lumberjack Saloon contract were made to Thomas.

When their marriage ended in 1995, Debra was forty-one years old and Thomas was fifty-three. No children had been born to them.

Debra was employed by Missoula County, earning $7.49 per hour. The parties had $45,000 in equity in their Lolo mobile home and real property. Debra was renting the mobile home to others and using the rent payments to make the monthly payments on the property.

The District Court awarded Debra the mobile home, land, and debt thereon; her $1,657 retirement account; two vehicles valued at $1,975 and $5,200; a $400 raft; and a 40 percent interest in the remaining proceeds of the second sale of the Lumberjack Saloon. The court awarded Thomas his interest in the tile company; a truck valued at $10,318; the $100,000 in proceeds received from the first sale of the Lumberjack Saloon; the $37,500 down payment on the second sale of the Lumberjack Saloon; payments made on the second sale through May 1995; and 60 percent of the remaining proceeds of the second sale of the Lumberjack Saloon. The court found that, after the property distribution, Debra would have sufficient monies to support herself, so that maintenance was not appropriate.

Did the District Court err in its valuation of the marital estate?

The District Court found that, at the time of the dissolution, the principal balance due on the second contract for sale of the Lumberjack Saloon was $257,738.62. The court then calculated the value of the remainder due on the second contract as $538,620, arriving at its valuation by multiplying the number of future payments, 192, by the monthly payment amount of $2,610.

Thomas argues that this was not a proper method of valuing the contract for two reasons: (1) the monthly payment amount used by the court includes a $25 monthly bank escrow fee, which is not marital property, and (2) the valuation includes the total amount of interest to be paid over the term of the contract, and does not reflect present value. Debra responds that Thomas cannot now complain about the court's valuation of the contract because he did not offer the court any evidence to establish a different value for the contract.

Debra maintains that the District Court used the same method of valuing the contract as the method approved by this Court in In re Marriage of Porter (1991), 247 Mont. 395, 807 P.2d 192. It is true that in Porter, the court did not discount to present value the value of a contract for deed. However, in Porter, the court valued the contract at the balance due thereon, not at the balance due plus interest and bank escrow fees, as was done in the present case. Porter, 807 P.2d at 194.

Thomas also points out that the court awarded him the down payments from the first and second sales of the saloon, but that the record establishes that these monies were used to acquire other marital assets, such as the Lolo mobile home and land which were awarded to Debra and the tile business which was awarded to Thomas. The result is that the court included these assets twice in its valuation of the marital estate.

The District Court found that the net value of the marital estate was $544,350. It valued the property awarded to Debra at

4

$240,090.35, and the property awarded to Thomas at $468,098.84. The total of those two awards, which should match the net value of the marital estate, is $708,189.19.

Valuing assets and fixing the net worth of the marital estate are two important determinations which must be made by the district court in the process of apportioning marital property under § 40-4-202, MCA. This is the basis upon which the court makes an equitable apportionment of the marital estate. Without these determinations, the equitable distribution of marital assets amounts to only guesswork. Cook v. Cook (1980), 188 Mont. 473, 479, 614 P.2d 511, 515.

While the District Court's disposition of future proceeds from the contract for sale of the Lumberjack Saloon (60 percent to Thomas and 40 percent to Debra) may be equitable, its valuation of the balance due on the contract is not supported in the record. Further, double inclusion of other assets is not supported in the record. Correction of those errors will result in adjustments to the values of the portions of the marital estate awarded to the parties, the total of which, as Debra concedes, should match the net value of the marital estate. We therefore vacate the portions of the dissolution decree relating to property valuation and distribution and remand for reconsideration of these matters.

Thomas also argues that the court erred in failing to credit him with his substantial contribution of premarital assets to the marital estate. Because resolution of the dispositive issue above will require recalculating the net worth of the marital estate, we

5

conclude that the question of whether the court erred in its distribution of marital property cannot further be addressed at this time.

The property valuations and distribution in the decree of dissolution are vacated. We remand this case to the District Court for further proceedings in accordance with this Opinion.


_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices