PETER M. KRONOVICH, Respondent and Defendant, v.
DARLENE KRONOVICH, Plaintiff and Appellant.

No. 14160.
Submitted on Briefs Oct. 3, 1978.
Decided Dec. 18, 1978.
588 P.2d 510.

James W. Zion, Helena, for plaintiff and appellant.

Ralph T. Randono, Great Falls, for respondent and defendant.

MR. JUSTICE HARRISON delivered the opinion of the Court.

A decree of divorce was entered in favor of defendant-appellant Darlene Kronovich and against plaintiff-respondent Peter M. Kronovich on January 10, 1973. On October 5, 1977, plaintiff moved the District Court of the Eighth Judicial District to modify the decree of divorce by eliminating the award of alimony to defendant. A hearing on the motion was held November 23, 1977, resulting in the elimination of plaintiff's alimony and certain alimony arrearages. Defendant appeals.

This cause was submitted on briefs pursuant to the Internal Operating Rules of this Court.

Subsequent to the 1973 divorce of the parties to the present action, they returned to court a number of times to settle a variety of conflicts. Plaintiff's most consistent and recurring complaint has been with respect to the award by the District Court of $200 per month for permanent alimony for defendant. Shortly after the original order was filed, plaintiff moved the District Court to amend its judgment by omitting the award of alimony. The District Court denied plaintiff's motion.

On February 13, 1974, plaintiff again sought to discontinue the alimony payments by filing a petition to modify the decree of divorce. In that petition he alleged that defendant had been offered employment but had refused it because she was receiving alimony payments. The court refused to modify the decree of divorce, but it did order defendant to undergo a complete physical examination to determine if there was any reason she could not seek employment. On March 24, 1977, following some further attempts to find suitable employment or a suitable training program for defendant, the

parties entered into an oral stipulation before the District Court whereby plaintiff agreed to continue the alimony payments until defendant became employed or entered a training program which would provide maintenance. In return defendant agreed to enroll in a vocational training course and to relieve plaintiff of having to pay certain overdue alimony payments.

Sometime in April defendant contacted Mrs. Zoe Graham, a placement specialist with the Vocational Rehabilitation Center in Great Falls. Because of some neck and back problems, defendant was determined to be vocationally disabled, requiring her to be re-trained in a new vocation and precluding her from returning to her previous vocation as a licensed practical nurse. She had not worked as a practical nurse since 1954.

On May 18, plaintiff, unaware that defendant had sought entry into a vocational training program in compliance with the March 24 oral stipulation, filed a petition for an order to show cause why she had not undertaken the pursuit of employment. Treating plaintiff's motion as a breach on the part of plaintiff of that same stipulation, defendant responded by seeking to collect the alimony arrearages she had agreed to release plaintiff from as part of the stipulation.

Before another hearing could be held on these matters, plaintiff allegedly approached defendant and her daughter on the evening of June 27, 1977. He told her he was attempting to sell his house and purchase another but before he could do so she would have to sign an acknowledgement that his maintenance payments were current. The acknowledgement read:

"ACKNOWLEDGEMENT OF SUPPORT PAYMENT is hereby admitted this 27th day of June, 1977, by the undersigned Darlene B. Kronovich, and further acknowledges that said support payments are current this date.

"/s/  Darlene B. Kronovich"

At the hearing of November 23, 1977, defendant described what had taken place that evening:

"Q. . . . tell us what Mr. Kronovich told you? A. Oh, he said that 'he just needed me to sign this, so that he could sell the house and buy their new place on Sun River.

"Q. And what was your response to that? A. I said, 'You are not going to use this thing to do anything dirty are you?' and he said, 'No', he said, 'don't be silly, I wouldn't do that,' so to enable him to sell this house, and to buy this other land on Sun River, I signed it. ". . .

"Q. Now, at that particular time, was there any discussion of back alimony or support that was owing to you? A. Before I signed it, I said, 'You know, you have not been up-to-date on this.'

"Q. And what did he tell you about that? A. He just kind of laughed, and said, 'I know, but I am not going to do anything dirty with this.' "

Apparently plaintiff changed his mind because three days later he filed the acknowledgement with the Clerk of the District Court as part of the record in this case.

On July 7, 1977, another hearing was held before the Honorable Joel G. Roth to examine the parties' compliance with the stipulation they had agreed upon in March. Defendant testified she had complied with the stipulation but that a lack of funds on the part of the Rehabilitation Services Division of the Department of Social and Rehabilitation Services had prevented her application from being processed more quickly. Judge Roth later conferred with the rehabilitation counselor assigned to defendant's case to find out the status of defendant's application at that time. On October 5, 1977, plaintiff again moved the District Court to amend the decree of divorce to eliminate the provision for alimony as a result of defendant's alleged failure to seek adequate employment.

The hearing which resulted in the order from which this appeal is taken was held November 23, 1977. The only persons to testify at that hearing were the rehabilitation counselor, defendant, and defendant's attorney. At the conclusion of the hearing, Judge Roth ordered plaintiff to pay all alimony arrearages dating back to June 27, 1977, when the acknowledgement was signed by defendant.

These included $50 for July, $50 for August, and $200 for each of the months of September, October and November. In addition, he ordered that the alimony payments terminate after the month of December. Finally, he refused to award attorney's fees to defendant's attorney.

Defendant raises three issues for our consideration in this appeal:

1. Whether the District Court erred in terminating the award of permanent alimony of defendant.

2. Whether the District Court erred in its determination of the amount of alimony arrearages plaintiff owed.

3. Whether the District Court erred in refusing to award defendant attorney's fees.

Section 48-330, R.C.M.1947, provides that, absent the written consent of the parties, maintenance decrees, or in this case alimony, may only be modified "upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable." This same language appears in the model act from which Montana's act is drawn. With respect to the modification of maintenance provisions, the commission's comment addresses the standard imposed:

". . . the person seeking modification must show that circumstances have changed since.the date of the original order so that the order is unconscionable at the time the motion is made and will continue to be unconscionable unless modified. This strict standard is intended to discourage repeated or insubstantial motions for modification." Uniform Marriage and Divorce Act § 316.

Plaintiff contends that defendant had not, at the time of the November 23 hearing, made a good faith effort to comply with the oral stipulation entered into in March, 1977, by entering a vocational rehabilitation program. This alleged failure of compliance appears to be the "change of circumstances" relied on by plaintiff to justify modification of the alimony provision.

In determining whether these are "changed circumstances so substantial and continuing as to make the terms unconscionable",

we must first examine the allegations of plaintiff's petition of October 5, 1977, and the proof adduced at the hearing on November 23, 1977, in support of the allegations. The pertinent parts of the petition read:

"That since the time of the last hearing, there has been no further effort by defendant to seek employment.

"That as a result thereof, it has caused plaintiff unnecessary severe financial hardship.

"WHEREFORE, petitioner prays that the Decree of Divorce heretofore be amended eliminating the provision for alimony as a result of defendant's failure to seek adequate employment . . .''

The hearing referred to as part of the first allegation is apparently the hearing of July 7, 1977. The "effort by defendant to seek employment" refers to the oral stipulation of the parties made on March 24, 1977. Unfortunately, there is no formal record of the oral stipulation. The only evidence of the stipulation is a copy of a letter sent to defendant's attorney by plaintiff's attorney which plaintiff's attorney filed with the District Court. The paragraph of the letter which refers to the parties' understanding with respect to alimony reads:

"Finally, we will agree to continue the alimony payments until such time as she is enrolled in the vocational training course of her choice and begins to receive her subsistence in this course."

The letter does not refer to any expectation on the part of either plaintiff or defendant with respect to how long it would take to be enrolled in vocational training. Defendant's testimony at the November 23, 1977 hearing revealed no act or omission on her part which had the effect of delaying her entrance into a vocational training program. On the contrary, she took every test required of her and called her rehabilitation counselor regularly to keep her apprised of her situation and to check on the progress of her application. The testimony of the rehabilitation counselor supported defendant's position. Throughout that testimony there was no indication that defendant's failure to be placed in a vocational training

program was in any way the result of her intransigence or lack of cooperation. At one point Mrs. Graham testified:

"Q. Now, do you recall when Mrs. Kronovich first made contact with your program? A. I believe it was in April, but I am not sure.

"Q. Of this year? A. Yes.

"Q. And would you tell us whether or not she has been cooperative with your program? A. Oh, yes."

In light of the record presented in this matter, it does not appear that plaintiff proved, under any standard of review, that defendant made "no further effort . . . to seek employment." In addition the record is completely devoid of any evidence or testimony relating to the alleged "severe financial hardship" suffered by plaintiff in having to pay alimony. That allegation in plaintiff's petition is the only other possible basis for plaintiff's claim that the alimony award had become unconscionable. As a result, the order of the District Court must be reversed because there has been no showing of "changed circumstances so substantial and continuing as to make the terms unconscionable", even to the extent alleged in plaintiff's motion.

■ The foregoing discussion should aid the District Court in any further proceedings in this case with respect to the issue of terminating an award of alimony. Our consideration of this matter, however, has been severely hampered by the failure of the District Court to make findings of fact and conclusions of law when attempting to modify this prior decree of divorce. *In Marriage of Capener* (1978), 177 Mont. 437, 582 P.2d 326, 328, we found that under section 48-322, R.C.M.1947, relating to maintenance for a spouse, it is necessary for the District Court to enter findings of fact to support its maintenance award. Without such findings, section 48-330, R.C.M.1947, relating to modification of maintenance, would be impossible to utilize as there would be no facts against which one could make a showing of "changed circumstances."

The same rationale applies when a court modifies a provision of

a prior decree on the basis of changed circumstances. Without a statement of what those changed circumstances are, in the form of findings of fact, there is no basis on which a District Court could find "changed circumstances" in any future proceeding which might be commenced for the purpose of further modification. Therefore, we hold that a District Court must make findings of fact whenever it modifies a prior award of maintenance on the basis of "changed circumstances so substantial and continuing as to make the terms unconscionable" under section 48-330, R.C.M.1947.

■ With respect to the second issue presented by appellant, i. e., the District Court's determination of alimony arrearages, we must again speculate about the District Court's reasons for not finding plaintiff delinquent in back alimony payments for any months prior to July, 1977. We assume the court considered defendant's acknowledgement, signed June 27, 1977, to be an effective waiver of any payments which had accrued but had not been paid prior to that date.

Plaintiff contends that the paper signed by defendant on June 27 was not a waiver at all but merely an "admission against interest" by defendant that plaintiff was current in his payments on that date.

The only person to testify at the November 23 hearing about the acknowledgement was defendant. She testified that she signed the paper for one purpose and one purpose only — to aid plaintiff in a real estate transaction totally unrelated to the instant case. There was no evidence or testimony introduced at the hearing which shed any other light on the transaction. There was no additional evidence presented to support plaintiff's contention that "as of [the] date [the affidavit was signed] Mr. Kronovich was current." The limitation imposed by the District Court with respect to back alimony is reversed, and the case is remanded for further consideration and the preparation of findings of fact to support the court's determination.

■ Finally, we address the issue of attorney's fees. The District Court addressed the issue in the following manner:

"THE COURT: . . . Now, is there a legitimate dispute about attorney fees in this matter?

"MR. GIANOTTI: Yes, we certainly would raise an issue about attorney fees in this matter your Honor.

"THE COURT: All right, I will not award attorney fees to the Defendant's Attorney."

Section 48-327, R.C.M.1947, provides for attorney's fees. This Court has held that where the District Court refuses to award reasonable attorney's fees, the court must indicate in the findings of fact, conclusions of law or order why attorney's fees were not awarded. *Dahl v. Dahl* (1978), 176 Mont. 307, 577 P.2d 1230, 1232. We remand for a finding with respect to attorney's fees.

The order of the District Court is vacated, and the cause is remanded for further proceedings consistent with this opinion.

MR. CHIEF JUSTICE HASWELL and JUSTICES DALY, SHEA and SHEEHY concur.