No. 80-262

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

IN RE THE MARRIAGE OF

WARREN D. BOWMAN,

Petitioner and Respondent,

vs.

JEAN L. BOWMAN,

Respondent and Appellant.

Appeal from: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone.
Honorable Diane G. Barz, Judge presiding.

Counsel of Record:

For Appellant:

Holmstrom, Dunaway & West, Billings, Montana

For Respondent:

Anderson, Edwards and Molloy, Billings, Montana

Submitted on briefs: June 24, 1981

Decided: September 14, 1981

Filed: SEP 14 1981

_Thomas J. Kearney_
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

Jean L. Bowman, appeals from the findings of of fact, conclusions of law and judgment entered by the District Court of the Thirteenth Judicial District, Yellowstone County. The judgment of the District Court dissolved the marriage of the appellant and petitioner, Warren D. Bowman; established child custody and child support; divided the marital estate; awarded maintenance to respondent; required petitioner to provide for the college education of the children, and; ordered each party to pay their own attorney fees and costs.

Appellant and respondent were married at Gallup, New Mexico, on June 12, 1957. They are the parents of four living children; Carolyn, born December 29, 1960; Joan, born May 24, 1962; Amy, born May 9, 1964; and, Eric, born April 19, 1969.

Respondent, age 50, is a physician and partner in the Billings Clinic. His net taxable income for 1978 was $63,800 and in 1979 was $78,048. The District Court found that respondent was in excellent health and that his prospects for continued employment as a physician were good.

Appellant, age 41, has been primarily a housewife during the marriage. However, she also works part-time as director of Christian Education at St. Luke's Episcopal Church in Billings and as a director of the Western State Bank of Billings. She earns approximately $4,500 per year from these positions. She has been actively involved in community, church, and political activities. Appellant has attended Rocky Mountain College and earned 72 credit hours toward a degree in economics. She needs 52 additional credit hours to obtain her degree. The District Court also found appellant to be in excellent health.

At the time of dissolution, the net worth of the marital estate of the parties was $416,301.64. Pursuant to an agreement reached by the parties, appellant received approximately $159,000 in assets. These assets were primarily nonincome assets.

Custody of the minor children, Joan, Amy and Eric was granted to the appellant. Respondent was granted reasonable visitation rights and ordered to pay $250 per month child support for each of the minor children until each minor child reached age 18 or was graduated from high school, whichever occurred last. He was also required to pay all medical and dental bills incurred by the children and pay all expenses necessary for the children to obtain college degrees.

The District Court found that appellant was clearly able to obtain employment outside the family home. She was attending college and the court found that a realistic graduation date was June 1982. Although the District Court found that the appellant's present employment was not appropriate and that she was in need of further education, the court specifically determined that it was unfair to require the respondent to pay maintenance enabling her to obtain a law degree or any post-graduate degree. Based on these findings, the District Court awarded the appellant maintenance of $1,500 per month, to terminate on June 1, 1982, the expected graduation date.

The District Court ordered that each party bear his or her own attorney fees and costs relating to the dissolution.

The issues presented on appeal are:

1. Whether the District Court erred in limiting the duration of maintenance payments for appellant to two years following dissolution?

-3-

2. Whether the District Court erred in refusing to award the appellant attorney fees?

Appellant does not contest the net worth valuation, the distribution of assets, or the amount of maintenance awarded; she appeals from the District Court's limitation on the duration of maintenance.

Awards of maintenance are governed by section 40-4-203, MCA. This provision states:

"(1) In a proceeding for dissolution of marriage or legal separation or a proceeding for maintenance following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:

"(a) lacks sufficient property to provide for his reasonable needs; and

"(b) is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

"(2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, and after considering all relevant facts including:

"(a) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

"(b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

"(c) the standard of living established during the marriage;

"(d) the duration of the marriage;

"(e) the age and the physical and emotional condition of the spouse seeking maintenance; and

"(f) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance."

-4-

In awarding maintenance the District Court must first determine if maintenance is appropriate under the standards set forth in 40-4-203(1)(a) and (b), MCA. Then, if maintenance is deemed necessary, the District Court must determine duration and amount of the award. Such determinations <u>must</u> be made in accordance with the factors set forth in section 40-4-203, MCA. Grenfell v. Grenfell (1979), ___Mont.___, 596 P.2d 205, 36 St.Rep. 1100.

This Court has determined that the term "sufficient property" as used in section 40-4-203(1)(a), means income producing property, not income consuming property. Herron v. Herron (1980), ___Mont.___, 608 P.2d 97, 37 St.Rep. 387. This Court also has held that "appropriate employment", as used in section 40-4-203(1)(b), MCA, must be determined with relation to the standard of living achieved by the parties during the marriage. In Re Marriage of Madson (1978), ___Mont.___, 590 P.2d 110, 35 St.Rep. 1873. In the case at bar, the District Court found that the assets to be distributed to the spouse requesting maintenance, Jean Bowman, were primarily income consuming. The District Court also found that she was not appropriately employed at the present and would need further education. Therefore, the District Court determined that maintenance was proper. We hold that the District Court correctly determined that maintenance was necessary in this case.

However, in determining amount and duration of maintenance, the District Court appears to have ignored the considerations it applied in determining appropriateness of maintenance. The considerations of whether assets consume or produce income and whether employment is appropriate must also be evaluated and applied when establishing amounts and duration of maintenance.

The District Court determined that the appellant was entitled to maintenance of $1,500 per month for 24 months beginning June 1, 1980, and terminating on June 1, 1982. The basis stated in support of the order was that the appellant could realistically be expected to obtain her degree in economics from Rocky Mountain College and that it was ". . . unfair and unjust to require Petitioner [Warren Bowman] to pay maintenance to Respondent [Jean Bowman] for law school or other graduate degrees she may want in the future." Apparently, the District Court determined that appellant's bachelor degree in economics would enable her to find appropriate employment to support herself in a manner similar to that enjoyed during the marriage. However, this determination contradicts other findings made by the District Court and is unsupported by the record. Therefore, it is clearly erroneous and must be reversed. Rule 52(a), M.R.Civ.P.

Eliminating maintenance for Jean Bowman, would force her to immediately begin earning at least $18,000 per year to replace the lost maintenance and maintain the standard of living found appropriate. Testimony by Jean Dimich, a career planning and placement counsel at Rocky Mountain College, who specialized in job opportunities for women, indicated that Jean's chances for obtaining employment with merely a bachelor's degree in economics were not very good. The following is an excerpt from her testimony.

> "Q. Assuming, for sake of argument, that a person is 41 years old, with very limited work experience, and without a college degree, the person is a woman, and is entering the job market full-time for the first time. What types of jobs and what salary ranges are available to that person in this community?
>
> "A. Well, for the most part, what a woman is encouraged to do would be to go get Vo-Tech training and brush-up on clerical skills, and go to a job of minimum wage or slightly above, around $600.00

would be the kind of a job that a person could get. Basically, they would be talking about skilled training, some kind of clerical skilled training.

"Q. Now, assuming the same situation, assuming that the person is a woman, 40 years old, or thereabouts, with a college degree entering the labor market for the first time, what opportunities are available to that person?

"A. Well, the chances are better. But it is still very, very competitive. There is an over supply in Billings of well educated women who have been transferred in here with their husbands, mostly. With the people that I talk with in the community who are involved in this sort of thing, say, when a job opens up that is considered a professional position and would pay, say $1,000.00 a month, 30 to 60 people apply for that position. Many of whom have master's degrees. That doesn't mean that the job always requires a master's degree. But there are a lot of people with those advanced degrees. So, other things being equal, they tend to squeeze out the bachelor's degree candidates.

"Q. Is the competition for that type of job limited to someone who is 40 years old and entering the job market for the first time?

"A. What has been happening with the job market is that women have been going into the work force in astonishing numbers. It has doubled in the last 25 years. And a great deal of increase are in the women 24 to 35 who traditionally were out of the work force. Now women aren't stepping out to raise children. They are staying in. So the competition for the 40 plus women without experience is even tougher than a few years ago. Because there are so many younger women with the work experience as well as the men. So it is getting tougher all the time.

"Q. What type of training must the 40 year old woman who is entering the work force for the first time have in order to have the best opportunity available to find a decent job?

"A. Well, I think that something that has been considered non-traditional for women is good. And that could be anything from a very technical laboring type position which pays well, to a professional degree, law degree, medical degree, or a master's of business administration I think is another marketable degree."

Thus, the order of the District Court terminating maintenance at a date closely coinciding with appellant's expected graduation with a bachelor's degree in economics places the appellant in a situation where she must depend

upon income consuming assets obtained in the dissolution and an employment future which is not bright without additional education. Granting her maintenance only until she obtains her bachelor's degree does not give the appellant enough time to obtain a sufficient education through which she can find employment to maintain, as nearly as possible, the standard of living she and the respondent enjoyed during their marriage. This is required by section 40-4-203(2), MCA. The cause must be remanded for further proceedings consistent with this opinion.

On remand the District Court must keep in mind that the appellant is receiving primarily income consuming assets in the dissolution; that the parties achieved a relatively high standard of living during the marriage; that the appellant must be given an opportunity for appropriate employment considering this high standard of living; and that the respondent is receiving primarily income producing assets.

With regard to the issue of attorney fees raised by appellant, this Court has consistently determined that when the District Court refuses to award attorney fees, it must indicate in the findings of fact, conclusions of law, or order why such fees were not awarded. Kronovich v. Kronovich (1978), ___Mont. ___, 588 P.2d 510, 35 St.Rep. 1946. The District Court failed to follow this procedure. The attorney fees requested by the appellant will be considered on remand, and if denied, reasons for such denial shall be stated.

The matter is remanded for proceedings in conformity with this opinion.

_____
Justice

-8-

We Concur:

_Gene B Daly_

_Daniel J Shea_

_John C Sheehy_

_[signature]_
Justices