No. 81-479

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

IN RE THE MARRIAGE OF

PAUL J. LEWIS,

        Petitioner and Respondent,

    -vs-

CARMEN H. LEWIS,

        Respondent and Appellant.

---

Appeal from:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, The Honorable
Robert Wilson, Judge presiding.

Counsel of Record:

    For Appellant:

        Keefer, Roybal, Hanson, Stacey & Jarussi,
        Billings, Montana

    For Respondent:

        Craig Derry, Billings, Montana

---

        Submitted on Briefs:  January 7, 1982

                Decided:  April 15, 1982

Filed:

_Thomas J. Kearney_
           Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Carmen H. Lewis (Carmen), the wife in a dissolution of marriage proceeding appeals from the judgment of the Thirteenth Judicial District Court, for Yellowstone County. She raises the following issues:

(1) Whether the District Court erred in awarding $5,000.00 to the wife as her portion of the marital estate;

(2) Whether the District Court erred in awarding $300.00 per month for a period of twelve months; and

(3) Whether the District Court erred in failing to require the husband to pay for the wife's reasonable attorney's fees.

We vacate and remand.

The findings of fact of the District Court in substance show that Paul J. Lewis (Paul), husband, and Carmen were married in 1974. At present Paul is 64 and Carmen is 53 years of age. Both previously have been married. No children were born of this marriage. Paul is a geologist and has worked in that field since 1948. While Paul was working in Algeria in 1970, he met Carmen. After correspondence, she accepted his proposal of marriage and came to live in the United States.

With regard to his net worth, the findings of the District Court shows that at the time of marriage Paul had a net worth of $178,877.00 consisting of his home worth $63,000.00, an automobile and personal property worth $6,900.00, shares of stock worth $65,600.00 and bank accounts totalling $43,377.00. As of the commencement of this action, Paul's net worth was found to be $194,809.00 with the increase of net worth due to inflation.

With regard to Carmen's net worth, the findings show that at the time of marriage she had little property but during the marriage acquired an interest in an apartment in Paris, France, which was not given any value, and rental real estate in Laurel, Montana, purchased by Carmen for $42,000.00 upon which she had paid $10,000.00, leaving a balance of $32,000.00 to be paid. While the evidence as to the source of the $10,000.00 downpayment is conflicting, the court found that the most convincing evidence was that it came from Carmen's savings. Evidence does disclose that such rental property in Laurel will contribute very little to Carmen's living expenses because substantially all of the rental payments are required for payment upon the debt, taxes and insurance.

While the District Court's findings do not specifically cover the income of both parties, it appears that Paul's income has risen steadily during the marriage, rising to $28,000.00 in 1979 of which approximately $12,000.00 was interest and dividends.

In contrast, while the evidence is somewhat contra-dictory, it does indicate that Carmen received $400.00 per month from her services as a manacurist, and possibly up to $75.00 or $80.00 per month from tips, an amount which she disputes.

Paul argued during the entire proceedings that all of the marital property was property acquired by him prior to marriage and that there was no reason to award a portion of that to Carmen. The District Court appears to have adopted that view as the court found that there are no marital assets of the estate and that the increase in Paul's net worth resulted from inflation. The District Court then

-3-

concluded that equity requires that Paul contribute to Carmen's adjustment from the dissolution of the marriage, that it was reasonable and fair that Paul pay Carmen $5,000.00 as her share of the property and that Paul pay Carmen maintenance of $300.00 per month for 12 months, or a total of $3,600.00.

While the facts regarding Carmen's earning capacity are not set forth in the District Court findings, they are significant. Carmen has been working as a manacurist for three days a week in an establishment in Billings, for which she earned a gross income of approximately $100.00 per week. There is a direct conflict in the evidence as to the amount she may have earned in tips. Even if we accept the amounts suggested by her husband, that would increase the weekly earnings only by approximately $20.00 for a total of $120.00 per week gross. Carmen estimates her monthly expenses to be $880.00; an amount which Paul does not dispute. Although Carmen has a beautician's license, the uncontradicted evidence by her former employer is that she does not have a capacity to do all types of hair work and is therefore limited to the work of a manacurist. Her former employer further testified that there is not sufficient work in the Billings area for her to increase her weekly earnings. In addition, Carmen testified that her health does not allow her to work more than three days a week. Carmen also has somewhat of a language problem.

Section 40-4-202, MCA, allows the court to "equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both." The same section requires the court to consider contributions of the other spouse when considering

property acquired before marriage, property received by gift or devise, and increased value of property acquired before marriage.

> "[P]rior acquired property and gifted property may be considered as part of the marital assets for division, but only after the court has considered the contributions of the other spouse, including the non-monetary contributions of a homemaker. If those contributions, including contributions of a homemaker, have facilitated maintenance of the property, the court in its discretion, may include such marital assets for division." In re Marriage of Jorgensen (1979), 180 Mont. 294, 299, 590 P.2d 606, 610.

When apportioning the property and assets of the parties, section 40-4-202, MCA, provides:

> "[T]he court shall consider the duration of the marriage and prior marriage of either party; antenuptial agreement of the parties; the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; custodial provisions; whether the apportionment is in lieu of or in addition to maintenance; and the opportunity of each for future acquisition of capital assets and income."

The evidence does not show that the court considered the above-mentioned factors in its apportionment of property and assets. In particular, there is no indication that the court considered the contributions of the wife as a homemaker or the apparent significant difference between the two spouses with regard to future acquisition of capital assets and income. Smith v. Smith (1981), ____ Mont. ____, 622 P.2d 1022, 38 St.Rep. 146. We therefore have concluded that additional findings are required on the part of the District Court as a proper foundation for an equitable distribution of properties between Paul and Carmen.

We also vacate the award of maintenance to Carmen. After the District Court has redetermined the property distribution as between Paul and Carmen, the court should

further consider the needs on the part of both parties as required under section 40-4-203, MCA. The court should determine if Carmen lacks sufficient property to provide for her needs and if she is able to support herself.

The District Court holding on attorney's fees is also vacated. "[T]his Court has consistently determined that when the District Court refuses to award attorney's fees, it must indicate in the findings of fact, conclusions of law, or order why such fees were not awarded." Bowman v. Bowman (1981), _____ Mont. _____, 633 P.2d 1198, 1202, 38 St.Rep. 1515, 1520; Kronovich v. Kronovich (1978), 179 Mont. 335, 588 P.2d 510. The District Court failed to follow this procedure. In the event that the District Court shall deny the wife attorney's fees on remand, the court should set forth the reasons for denial.

The decree of the District Court is vacated except for the dissolution of marriage. The cause is remanded for such additional proceedings as the District Court may determine to be necessary for the determination of the division of the marital property between Paul and Carmen, the determination of maintenance as to Carmen and the determination of attorney's fees, in accordance with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-6-